## ROSENCRANZ, Appellant, v. SWOFFORD BROTHERS DRY GOODS COMPANY.

### Division Two, June 9, 1903.

1. **Conversion: POSSESSION OF GOODS.** Where goods have been delivered by a shipper and consignee or his agent to a railroad company, and he receives a bill of lading in due form, whereby the common carrier agrees to transport the goods to a distant city and to redeliver them there to such consignee, such shipper has the possession of the goods and by virtue of that possession he has the right to recover the goods or their value from any person who seizes them on the route except the true owner, and if any other person wrongfully obtains possession of them he can not defeat the shipper's action of trover and conversion for the value of the goods by showing title in another without connecting himself with the right of such other person. That connection may be established by a showing that the true owner had fraudulently sold or transferred the goods to the shipper and consignee for the purpose of hindering or delaying his creditors, and such creditors may attach them in transit whenever they come within the jurisdiction of the court wherein the attachment writ is sued out.

2. ———: ———: **ATTACHMENT.** The title of one in the actual possession of goods is not in anywise affected by attachment suits which are not prosecuted to judgment.

3. ———: ———: ———: **RELEASE: TRANSFER OF GOODS TO ANOTHER STATE AND ATTACHMENT THERE.** Where a plaintiff, having a legal right to attach goods in transit, by means of attachment brings them within the jurisdiction of a court, the sheriff has no right to deliver them to the plaintiff or his agent, and if he does plaintiff acquires no legal possession over them. And if plaintiff subsequently dismisses the attachment suit his possession thereafter is illegal, and is no defense to an action for conversion by the shipper who was in legal possession, whether that possession was bona fide or obtained as a result of an effort by the true owner to delay or

Rosencranz v. Swofford Bros. Dry Goods Co.

defraud his other creditors. And if plaintiff in that attachment suit after the goods have been turned over to him by the sheriff and his suit was dismissed, transports the goods to another State, and there sues out an attachment which he prosecutes to a judgment, that court never had any jurisdiction over the subject-matter of the suit, and, hence, its judgment is no defense to a suit against the plaintiff therein by the shipper in legal possession for conversion.

4. ——: ——: ATTACHMENT: DISMISSAL: TRESPASSER: JURISDICTION. The legal possession of goods seized under a writ of attachment issued out of a court having jurisdiction over them, is in the sheriff, and when that is dismissed it is in the defendant in the attachment, although they may be actually in the possession of the plaintiff. And although the sheriff may have turned them over to such plaintiff, yet the plaintiff is a trespasser from the dismissal of the suit, and if he holds them until another attachment is sued out at his instance his possession is illegal and he continues a trespasser and is liable for conversion.

5. ——: ——: REMOVAL TO ANOTHER STATE: ESTOPPEL. Where the creditor of the actual owner of goods, who has turned them over to another who delivers them in his own name to a railroad to be shipped to himself as consignee to another city, attaches such goods in transit, and then induces the sheriff to turn them over to him, and transports them across the line into another State and there, having dismissed his first attachment, sues out another, however honest and valid may be his claim as a creditor against the true owner, and however fraudulent may have been the transfer of the goods to the shipper, the court does not acquire any jurisdiction by the last attachment, and the shipper in a subsequent suit in this State for conversion is not estopped from questioning the jurisdiction of a court of a foreign State obtained in such a manner.

6. ——: DEFENSE: ATTACHMENT. A defendant who has taken possession of property under an attachment and dismissed the same, but retained the goods and sold them, without the court in pursuance to whose orders they were sold ever having obtained jurisdiction over his suit, can not in a subsequent suit for conversion be heard to justify the seizure and possession of the goods by showing that the transfer thereof by the true owner, who was his creditor, to the person in whose possession they were at the time of the attachment, was fraudulent as to the creditors of such true owner, and done to hinder or defeat them.

7. ——: ——: FREIGHT CHARGES. The lien of a common carrier on goods for freight charges for transporting them, is not transferable, can not be sold or assigned, and if a creditor of the true owner pays the freight charges, and the carrier's lien is assigned

to him, and he thereby gets the goods into his hands, that lien will not be available to him as a defense in a subsequent suit by the shipper, who was also the consignee, against him, for conversion.

8. ————: ESTOPPEL: SEIZURE OF GOODS: PREFERRED CLAIM: TRESPASSER. A purchaser of goods said to defendant that he owed plaintiff $2,100, who would not trouble him for the debt, nor permit her claim to interfere with the payment of the claims of other creditors, and thereupon defendant sold him a bill of goods, and afterwards wrote to plaintiff about the purchaser's statement, who replied that it was correct, and soon thereafter this purchaser shipped to plaintiff a large amount of goods, which defendant stopped in transit, and had them sold under the process of a court which never acquired jurisdiction over them, and thereupon plaintiff sued in conversion for the value of the goods so seized. *Held,* that the statement of the purchaser and the letter of the plaintiff, did not operate to estop plaintiff's suit, since her assurance was not given until after defendant had sold and delivered the goods, there being no binding agreement between her and defendant not to enforce her indebtedness against the interests of defendant, and she had no agreement with the purchaser's creditors not to collect her debt or to give them any preference, and the defendant had not sold the goods on the strength of her assurance. *Held,* second, that defendant can not invoke such representation in estoppel because in seizing the goods defendant was a trespasser.

9. Estoppel: GENERAL RULE. There can be no estoppel unless the party alleging it relied upon the representations of the other, and was induced thereby to take some action to his own injury.

Appeal from Jackson Circuit Court.—*Hon. Edw. P. Gates,* Judge.

REVERSED AND REMANDED.

*Wollman, Solomon & Cooper* for appellant.

(1) The taking of the goods from Missouri to Kansas was an illegal and fraudulent attempt to give the Kansas court jurisdiction of the property, and the court of common pleas of Wyandotte county, Kansas, obtained no jurisdiction over the property, and the ex parte proceedings and judgment therein are void and of no effect whatever. Deyo v. Jennison, 10 Allen 410; Ilsley v. Nichols, 12 Pick. 270; Alderson on Judicial Writs and Process, 275, 276, 277; Drake on Attachment,

sec. 193; 1 Wade on Attachment, sec. 130; Haddan v. v. Dooley, 92 Fed. 274; Parsons v. Dickinson, 11 Pick. 352; Wood v. Wood, 78 Ky. 624; Dunlap v. Cody, 31 Iowa 260; Dininger v. Moschino, 93 Ind. 495; Classon v. Morrison, 47 N. H. 482; Pomeroy v. Parmlee, 9 Iowa 140; Gilbert v. Hollinger, 15 La. Ann. 441; Myers v. Myers, 8 La. Ann. 369; Paradise v. Bank, 5 La. Ann. 710; Powell v. McKee, 4 La. Ann. 108; Giles v. Devins, 11 Cush. 59; Higgins v. Whitney, 24 Wend. 379; Drake on Attachment, secs. 87 a, b, c, 88, 89; Tenney v. Taylor, 1 App. D. C. 223; Bank v. Knox, 47 Mo. 334; Byler v. Jones, 79 Mo. 261.    (2)   Defendant was trespasser, and wrongfully seized and took possession of the goods and took them into the State of Kansas, and no subsequent attachment levied at the instance of the defendant can purge defendant of its original wrong or form any justification to defendant for its conversion of the property.    Parsons v. Dickinson, 11 Pick. 352; Deyo v. Jennison, 10 Allen 410; Ilsley v. Nichols, 12 Pick. 270.    (3) Defendant having illegally and fraudulently obtained the goods from plaintiff, who was in the rightful and sole possession thereof, can not justify its wrong or claim any title or right to possession by showing or attempting to show that the sale from Goldberg to plaintiff was fraudulent as to Goldberg's creditors. Plaintiff was in possession of the goods; defendant wrongfully took them from her, and plaintiff's possession thereof is sufficient as against defendant, who neither owns nor has any lien upon the goods.    Greenleaf on Evidence, sec. 34; Cobbey on Replevin, sec. 786; Craig v. Mason, 64 Mo. App. 342; Van Zant v. Hunter, 1 Mo. 51; State ex rel. v. Hope, 88 Mo. 430; Cooley on Torts, pp. 441-445; Guttner v. Pacific Steam Whaling Co., 96 Fed. 619; Stowell v. Ottis, 71 N. Y. 36; Hudson v. Willis, 11 S. W. 274; Mississippi Mills v. Meyer, 83 Texas 433, 18 S. W. 748; Armory v. Delamirie, 1 Stra. 505; McKee v. Scott, 9 Cush. 150; Fish v. Skut, 21 Barb. 333; Linscott

v. Trask, 35 Me. 150; Millay v. Butts, 35 Me. 139; Van
Darlen v. Dean, 27 Mich. 104; Laughlin v. Thompson,
76 Cal. 287; Lowermore v. Berry, 19 Ala. 130; Donnell
v. Thompson, 13 Ala. 440; Bartlett v. Hoyt, 29 N. H.
317; Parker v. Dement, 9 Gill 9; Wheeler v. Lawson,
103 N. Y. 40; Kapp v. Winchester, 11 Vt. 351; Ireland
v. Horseman, 65 Mo. 511; Jeffries v. Railroad, 5 El. &
Bl. 802; Pallen v. Bogy, 78 Mo. App. 96; Turley v.
Tucker, 6 Mo. 586; 26 Am. and Eng. Ency. of Law (1
Ed.), 748. (4) The railroad company had no assign-
able lien upon the property, and the assignment of the
pretended lien conferred no right of possession either
upon Joseph H. Roy or defendant. 5 Am. and Eng.
Ency. of Law (2 Ed.), 420; Everett v. Saltus, 15 Wend.
478; Jones v. Sinclair, 2 N. H. 319; Ames v. Palmer,
42 Me. 197; Lempriere v. Pasley, 2 T. R. 485; Wing v.
Griffin, 1 E. D. Smith 162.

*Ellis, Cook & Ellis* for respondent.

(1) To vitiate the seizure and sale of the goods in
controversy in this case (appellant being adjudged the
holder of a title, both voluntary and fraudulent), deceit,
fraud or unlawful oppression by respondent, resulting
in injury to appellant, must be shown. This not ap-
pearing, the judgment must be affirmed. Bank v. Dav-
idson, 18 Or. 57; s. c., 22 Pac. 517; Tel. Co. v. Railroad,
14 N. Y. Sup. Ct. 377; Bank v. Winston, 5 Baxt. (Tenn.)
685; 19 Ency. Pl. and Prac., 608. (2) Rosencranz is
estopped to cross the threshold of inquiry. The agree-
ment with Goldberg to not allow his claim to trouble the
latter so long as Swoffords were unpaid, which was com-
municated to and relied upon by Swoffords (and later
confirmed by Rosencranz), is a complete estoppel, cer-
tainly until Swoffords were paid in full. Rice v. Bunce,
49 Mo. 235; Bank v. Buck, 123 Mo. 141; 2 Herman, Es-
toppel, sec. 950; Horn v. Cole, 51 N. H. 289; 2 Pom.
Eq., p. 258.

GANTT, P. J.—This is an action of trover and conversion to recover the value of thirteen cases and seven bales of dry goods, clothing, etc., and was brought and tried in the Jackson Circuit Court, and resulted in a verdict for defendant. Plaintiff appeals.

On November 4, 1895, one Herman Goldberg, a merchant of Raton, New Mexico, sold and delivered these goods to the plaintiff, Bertha Rosencranz. Swofford Brothers Dry Goods Company was and is a wholesale clothing house of Kansas City, Missouri. Mrs. Bertha Rosencranz, the plaintiff, is a citizen of Chicago, Illinois, and her husband, a brother-in-law of Goldberg. Goldberg had been dealing with Swofford Brothers for some time prior to August 24, 1895, and that company had sold him goods on credit, but not in large quantities. On the last-mentioned date Goldberg came to Kansas City to buy a bill of goods of Swofford Brothers and others. On that day he made a statement of his financial standing to Swofford Brothers in which it appears his total assets were $7,550 and his liabilities $2,621. Among his liabilities he scheduled a debt for borrowed money to J. B. Rosencranz for $2,100, and gave as reference J. Rosencranz, 215 Halstead street, Chicago. At the same time he stated that J. Rosencranz was his brother-in-law, and the debt of $2,100 was the balance of purchase price of original stock bought by Goldberg of Rosencranz, and the latter was willing to carry said indebtedness, and not allow it to bother him in paying his other creditors, and thereupon Swofford Brothers sold him goods to the amount of $1,374.98. On the 2nd day of October, 1895, after the shipment of the goods, the credit man of Swofford Brothers, in the name of said firm, wrote J. Rosencranz the following letter:

"Kansas City, Mo., 10-2-'95.

"J. Rosencranz, 215 Van Buren St., Chicago, Ills.

"Dear Sir: In a statement rendered us in August last by Mr. Herman Goldberg of Raton, N. M., he gave

us among his liabilities an indebtedness to you of $2,100. He explains to us that you are his brother-in-law and that this is a balance on the purchase price of the original stock bought from you. He also says that you are willing to carry this indebtedness for him and not allow it to bother him or interfere with his paying his other creditors. His account with us has so far been satisfactory, and if his indebtedness to you does not bother him, he offers a fair risk. We would like to hear from you direct as to the correctness of his statement. We inclose stamped envelope for your reply.

"Yours truly,

"Swofford Bros. Dry Goods Co."

And on October 6, 1895, the following reply was received:

"Chicago, Ill., 10-5-'95.

"Messrs. Swofford Bros., Kansas City, Mo.

"Gentlemen: Yours of recent date was received by me. Replying to same, I will say that the statement made to you in August last by Herman Goldberg of Raton, N. M., regarding the indebtedness to me of $2,100, was correct.

"Yours respectfully,

"B. Rosencranz."

The plaintiff offered evidence that afterward on the 3rd day of November, 1895, the plaintiff through her husband J. Rosencranz, acting as her agent, delivered the goods for whose conversion this action was commenced, to the Atchison, Topeka and Santa Fe Railroad Company, a common carrier engaged in transporting merchandise from Raton, New Mexico, to Chicago, Illinois, and received a bill of lading in her favor in due form, whereby said company agreed to deliver said goods to her in Chicago, Illinois; that Kansas City, Missouri, is on the line of said railroad between Raton and Chicago. That the defendant, Swofford Brothers, on the 7th day of November, 1895, sued out an attachment for $1,385.80 in the circuit court of Jackson

county, Missouri, at Kansas City, in favor of said Swofford Brothers Dry Goods Company and against H. Goldberg, on the ground of non-residence, and under said writ the said defendant directed the sheriff of Jackson county, Missouri, to attach and take from the possession of the said railroad company, all of the goods described in the petition, and said sheriff, on the 8th day of November, 1895, attached and took said goods out of the possession of said railroad company in Kansas City, Missouri. That afterwards, on the 9th day of November, 1895, said Swofford Brothers Dry Goods Company dismissed its said attachment suit, and on the 11th of November, 1895, said sheriff released said goods. No other proceedings were had against said goods in Jackson county, Missouri. By direction of the defendant, the sheriff turned the goods over to H. Leftwitch, an employee of defendant, and Joseph H. Roy, an employee of defendant's attorneys.

Prior to the commencement of the suit in Jackson county, Missouri, the Swofford Brothers Dry Goods Company, having learned of their shipment from Raton, brought an action by attachment in Johnson county, Kansas, and summoned the railroad company as garnishee. The sheriff of Johnson county, Kansas, did not succeed in seizing the goods, and it was learned they had gone into Kansas City, Missouri, where, as already said, they were levied on by the sheriff of Jackson county, Missouri, and removed from the cars.

It seems this seizure aroused the railroad company, and the Swofford Brothers being anxious to avoid controversy with the railroad, which had a lien for its freight charges, it was stipulated that the railroad should receive its earned freight. Thereupon Joseph H. Roy took an assignment from the railroad company of its claim for freight lien on the goods, and the goods were then delivered to Mr. Leftwitch, an employee of defendant Swofford Brothers, under the

direction of their attorneys. After that the suit in Jackson county, Missouri, was dismissed.

Thereupon by direction of Swofford Brothers, or their attorneys, the goods were then placed in wagons and driven across the State line into Kansas.

The money which was paid by Roy to satisfy the freight bill was paid by Swofford Brothers. When they reached Kansas, Cummins, the deputy sheriff of Wyandotte county, Kansas, under the direction of Swofford Brothers, levied upon the goods. They were marked B. Rosencranz, Chicago, Illinois. This levy was made under a writ of attachment issued by the clerk of Johnson county, Kansas, in the suit commenced there as already noted. It seems no publication was made in this suit within the forty days required by the laws of Kansas, and subsequently this suit, like the one in Jackson county, Missouri, was also dismissed, and no further steps taken in it, but prior to its dismissal and while the goods were still in the hands of the sheriff of Wyandotte county, Kansas, Swofford Brothers Dry Goods Company, the defendant herein, brought still another action in attachment in the common pleas court of Wyandotte county, Kansas, against Goldberg, and by its direction the sheriff of that county levied upon the same goods then in his hands. Constructive service by publication was then obtained in this last-mentioned case, and judgment taken, and the goods sold, and bought in by defendant. There was no appearance by Goldberg or Mrs. Rosencranz in any of the cases. Thereupon on January 23, 1896, plaintiff brought this her action against Swofford Brothers for conversion. The defendant in its answer pleaded: first, a general denial; second, an estoppel on the part of plaintiff, by reason of her agreement not to enforce her debt in preference to Goldberg's other creditors; third, a lien for the amount of the freight paid by defendant; fourth, that the transfer by Goldberg to plaintiff in New Mexico was by the laws of that Territory

a general assignment for creditors; fifth, want of capacity in plaintiff to maintain this suit; sixth, because the transfer of the goods by Goldberg to plaintiff was fraudulent and with intent to hinder and delay creditors.

The reply denied all new matter and again prayed judgment. Among other instructions plaintiff prayed the court for the following:

"9. The jury are instructed that if the plaintiff delivered the goods in controversy to the Atchison, Topeka & Santa Fe Railroad Company, to be transported to Chicago, Illinois, and while enroute to Chicago the same were taken from said company under a writ of attachment, issued at the instance and served under the direction of defendant, and that said attachment suit was dismissed, and that the attorney for said railroad company assigned the lien of said railroad company on said goods for freight and made said assignment to one Roy, if the jury find that said Roy was acting for the said defendant in taking said assignment, and that the said defendant, in the name of said Roy, took possession of said goods at Kansas City, Missouri, then they must find for plaintiff, notwithstanding that said Swofford Brothers Dry Goods Company subsequently caused said goods to be attached.

"10. The jury are instructed that, if said Swofford Brothers attached the said goods at Kansas City, Missouri, and thereafter released their attachment and then sent said goods over into the State of Kansas, of which State the said Goldberg was a non-resident, for the purpose of having the same attached there, the courts of the State of Kansas acquired no jurisdiction over the said goods, and said attachments so issued in the State of Kansas are void, and the jury will entirely disregard them."

I. Prima facie, plaintiff was and is entitled to the possession of the goods which she shipped from Raton, New Mexico, to Chicago, *or* their value.

Whether bona fide, or with intent to hinder, defeat or delay creditors, the evidence unquestionably shows possession in Mrs. Rosencranz at Raton, New Mexico, and the receipt for her of the goods by the Santa Fe railroad to be transported to Chicago and to be redelivered there to her. By virtue of her possession she had the right to recover the goods or their value from every person except the right owner.

This has been the common law since the decision in Armory v. Delamirie, 1 Strange 505, wherein it was held that the finder of a jewel was entitled to bring trover against one who, having taken the jewel for examination, refused to return it.

In the language of LORD CAMPBELL, "The law is that a person possessed of goods as his property has a good title as against every stranger, and that one who takes them from him, having no title in himself, is a wrongdoer, and can not defend himself by showing that there was title in some third person; for against a wrongdoer possession is a title. The law is so stated by the very learned annotator in note to Wilbraham v. Snow, 2 Wm. Saunders 47; and I think it most reasonable law, and essential for the interests of society, that peaceable possession should not be disturbed by wrongdoers. It is not disputed that the *jus tertii* can not be set up as a defense to an action of trespass for disturbing the possession. In this respect I see no difference between trespass and trover; for in truth the presumption of law is that the person who has the possession has the property. Can that presumption be rebutted by evidence that the property was in a third person, when offered as a defense by one who admits that he himself had no title and was a wrongdoer when he converted the goods? I am of opinion that this can not be done." [Jefferies v. Railroad (5 El. & Bl.), 85 Eng. Com. L. 802.]

Judge COOLEY in his work on Torts (2 Ed.), p. 520, mar. page 445, after reviewing various cases says:

"When, therefore, it is said that the plaintiff must have had, at the time of the conversion, the right to the property, and also a right of possession, nothing more can be intended than this: that the right of which he complains he has been deprived must have been either a right actually in possession, or a right immediately to take possession." [Cobbey on Replevin, sec. 786; Vanzant v. Hunter, 1 Mo. 71; Stowell v. Otis, 71 N. Y. 36; Knapp v. Winchester, 11 Vt. 351; Bartlett v. Hoyt, 29 N. H. 317; Guttner v. Pac. Steam W. Co., 96 Fed. 619.]

Plaintiff having possession of the goods, the law is that one who has wrongfully obtained the goods from her can not defeat her action by showing title in another without connecting himself with the right of such person.

How has defendant rebutted or attempted to show title out of plaintiff?

It is clear that neither by the attachment suit commenced in the circuit court of Johnson county, Kansas, nor by the attachment sued out in the circuit court of Jackson county, Missouri, was the title of plaintiff in any manner affected, because neither was prosecuted to judgment. The only question, then, is as to the effect of defendant's judgment in the Wyandotte County Common Pleas Court. This leads us to inquire what jurisdiction the common pleas court acquired over this property as between defendant and plaintiff. Plaintiff, being the shipper and consignee also of the goods, was prima facie the owner thereof, but defendant had the right to attach them if it could establish that the sale and transfer to plaintiff by Goldberg was fraudulent as against defendant, and when the action of defendant was commenced in Kansas City, Missouri, and the goods seized under the writ, the circuit court of Jackson county unquestionably acquired jurisdiction over them, but when defendant by means of attachment

Vol 175 mo—34

had brought the goods within the jurisdiction of the circuit court of Jackson county, and then induced the sheriff of Jackson county to turn them over to its agent, it is absolutely clear it had no legal possession. The sheriff had no right to turn them over to defendant. He held them by virtue of a writ, and subject to the lawful orders and judgments of the circuit court of Jackson county, and not as defendant might direct. But as if to remove the last semblance of authority for holding the goods, defendant dismissed its attachment under and by virtue of which the possession was acquired from plaintiff's carrier, and thus prior to the removal of the goods to Kansas defendant was in possession of plaintiff's goods without the slightest justification in law. It was as to plaintiff a naked trespasser in possession by virtue of an abuse of the State's writ of attachment. Having obtained the possession and dismissed its writ it had neither title nor color of right to retain the possession and if plaintiff had brought replevin or sued in conversion before the removal of the goods to Kansas and after the dismissal of the attachment suit brought in Jackson county, it is too plain for discussion that defendant would have had no defense whatever to the action. Whatever efficacy there might have been in the writ ceased when it was dismissed, and the officer who had levied it, instead of restoring the goods to the party from whom he took them, had turned it over to defendant who had no right to them. Prima facie the officer himself having a writ directed against Goldberg alone which he levied on property in plaintiff's possession, was a trespasser. [State ex rel. Robertson v. Hope, 88 Mo. 435.] And when at the instance of defendant, he turned the goods over to defendant, the latter also was a trespasser. Conceding that defendant was a creditor of Goldberg it would have had no right, merely because it was his creditor and that he was attempting to defraud it, to seize his property and hold it without any lawful process. How much less could it

justify its seizure of property of which Goldberg had no possession and which was in the possession of plaintiff. As said in Mississippi Mills v. Meyer & Co., 83 Texas 438: "The fact that a naked trespasser is the creditor of the owner of the goods, or that the plaintiff's title may be founded in fraud, will not justify the trespass." [Hudson v. Willis, 73 Texas 258.]

Such was the condition of affairs when defendant removed the property out of this State into Kansas in order that the Kansas writ of attachment could be levied upon it. As already said it seems the Johnson county attachment was levied on the goods in Wyandotte county. For two reasons defendant can not avail itself of that attachment by way of defense. First, because this attachment was, like the Missouri attachment, dismissed without having even gone to judgment and without service on Goldberg. Second, for the reason that defendant being in possession of the goods in Missouri purely and simply as a trespasser and having taken them into Kansas in order that the writ of attachment in that State could be levied on them, the levy conferred no jurisdiction, because it was a fraud in law, whatever the intention of defendant was, and this defendant can not avail itself of its wrongful act to confer jurisdiction on the courts of Kansas, and then plead their process as a defense to plaintiff's action for their original and continuing trespass and wrongful conversion.

However honest and valid its claim against Goldberg, and this we do not for a moment question, no valid legal sequestration could follow its illegal act in thus taking the property out of this State and having it attached for its benefit in Kansas. The courts can not and will not countenance such a method of acquiring jurisdiction and the plaintiff is not estopped to question the jurisdiction of a court of a foreign State obtained in such manner and by such means. But as we have said, the levy in the Johnson county case was abandoned and it constitutes

no defense. This leaves but the Wyandotte at-
tachment as a defense. This last attachment is per-
vaded with the same vice as that which preceded it. The
property was within the local jurisdiction of the Wyan-
dotte Common Pleas Court, solely and wholly as the
result of the original trespass of defendant, and this
subsequent attachment did not and could not purge it of
the original wrong in unlawfully taking the goods out
of this State into Kansas in order to confer a jurisdic-
tion which that court otherwise would not have had over
it. The proceeding was conducted at the instance of de-
fendant and we think that it is open to plaintiff's attack
on it for the same reasons that must govern the Johnson
county atachment. The stream can not rise higher than
its source. [Hoes v. Railroad, 66 N. E. 119.]

It is apparent then if we are right in holding that
the Kansas courts did not and could not acquire juris-
diction over plaintiff's goods in favor of defendant by
illegally taking them out of this State into Kansas in
order that defendant's attachment in that State might
be levied upon them, defendant had no defense to plain-
tiff's action by reason of any attachment or judgment
liens. Having no title in itself and no lien, can it be
heard to justify its seizure and possession of plaintiff's
goods by asserting or showing that the sale from Gold-
berg to plaintiff was fraudulent as to Goldberg's cred-
itors, or in other words, in such case can defendant show
title in a third person as a defense? We think the great
weight of authority is that it can not. Cobbey on Re-
plevin (2 Ed.), sec. 786, lays down the rule that, ''A de-
fendant who has wrongfully taken possession of the
property can not set up as a defense that other persons
who are not defendants have a lien on the property
which entitles them to its possession.''

And it was held in Mississippi Mills v. Meyer &
Co., 83 Tex. 438, that ''the fact that a naked trespasser
is a creditor of the owner of the goods, *or that the plain-
tiff's title may be founded in fraud,* will *not justify* the

trespass." This was the rule announced by Lord Campbell in Jefferies y. Railroad (5 El. & Bl.), 85 Eng. Com. L. 802. [Hudson v. Willis & Bro., 73 Tex. 256.]

Defendant was in no position to avail itself of the fraud of Goldberg, if any, in attempting to defeat his creditors, as it had not acquired Goldberg's title in any lawful manner, but was a naked trespasser in the circumstances, and has not connected itself with Goldberg's possession or title in any lawful manner.

II. Was it open to defendant to avail itself of the lien of the Santa Fe Railway Company for its freight charges?

It is too clear for discussion that the assignment to Roy was for defendant's benefit. He was acting for defendant's counsel in taking the assignment and it paid the money to procure the assignment and this was only one other step in the general scheme to get the goods out of Missouri into Kansas. If the sheriff of Jackson county had paid the freight bill and the attachment in Missouri had been followed up to judgment and sale, it may be the sheriff would have been allowed this amount, but as this was not done it is obvious that it was his duty when the attachment in Jackson county, Missouri, was dismissed, to have returned the goods, either to plaintiff, or her bailee, the railroad company.

In 5 Am. and Eng. Ency. of Law (2 Ed.), p. 420, it is said, "The lien of a railroad company for freight is neither property, nor a debt, but a mere right to have a debt satisfied out of certain specified property, and is a personal right which can not be sold or assigned."

In Ames v. Palmer, 42 Me. 197, the Supreme Court of Maine said: "It has been repeatedly decided, both in England and in this country, that the lien of a factor is a personal privilege which is not transferable, and that no question upon it can arise except between the principal and factor. [Daubigny v. Duval, 5 D. & E. 604; McCombie v. Davies, 7 East 5; Jones v. Sinclair,

2 N. H. 319; Holly v. Huggeford, 8 Pick. 73; Pearsons v. Tincker, 36 Me. 384.] No reason is apparent why the same consequences should not attach to the lien of a common carrier as to that of a factor. In both cases the nature of the lien is the same. Both are common law liens. . . . The object of these liens being the same, their effect must be the same."

In Holly v. Huggeford, 8 Pick. 73, PARKER, C. J., said: "The lien of a factor does not dispossess the owner until the right is exerted by the factor. It continues only while the factor himself has the possession; and, therefore, if he pledges the goods for his own debt, or suffers them to be attached, or otherwise parts with them voluntarily, the lien is lost, and the owner may trace and recover them, *or he may sue in trespass if they are forcibly taken;* for his constructive possession *continued* notwithstanding the lien." [Lempriere v. Pasley, 2 T. R. 485; Everett v. Saltus, 15 Wend. 478.]

The lien of the Sante Fe Railway Company was no defense to plaintiff's right of action in this case. It ceased when the company assigned or attempted to assign it to defendant.

III. But the defendant invokes the doctrine of estoppel against the plaintiff. This it predicates on the statement of Goldberg to defendant when he bought the goods, August 24, 1895, to the effect that he was indebted to Rosencranz in the sum of $2,100, but that Rosencranz was his brother-in-law, and that Rosencranz was willing to carry said indebtedness and not allow it to bother or interfere with his paying his other creditors, and subsequently in November, 1895, and after defendant had sold the goods to Goldberg, defendant wrote to J. Rosencranz, advising him of Goldberg's statement to it, and received a letter from plaintiff in which she says, "replying to same, I will say that the statement made to you in August last by Herman Goldberg of Raton, N. M., regarding the indebtedness to me of $2,100, was correct."

Plaintiff requested the court to instruct the jury that if Swofford Brothers Dry Goods Company sold no goods to Goldberg *after* receiving the letter from plaintiff, there was no binding agreement between plaintiff and Swofford Brothers Dry Goods Company not to enforce said indebtedness against the interests of said Swofford Brothers Dry Goods Company, which instruction the court refused, and plaintiff excepted. The court modified several similar instructions by adding thereto these words: ''Unless you further believe there was between the plaintiff and said Goldberg an agreement, and that the same was communicated to the defendant by said Goldberg, that plaintiff would not allow his indebtedness to her to bother him or interfere in any way with his paying for goods purchased of wholesale houses, and that defendant relying on and induced by such agreement extended credit to Goldberg.'' To this modification plaintiff duly excepted at the time.

The question is, was plaintiff, by reason of this representation by Goldberg and her subsequent letter, estopped to purchase goods of Goldberg to save her debt? It is plain that defendant was notified that Rosencranz was a creditor of Goldberg to the amount of $2,100. There was no concealment of this indebtedness. Without some valid contract binding her to other creditors not to enforce this debt, neither law nor justice would prevent the enforcement of this debt any more than any other obligation owing by Goldberg. Advised of this indebtedness before it sold to Goldberg, defendant took no steps to obtain such an agreement in its favor. It sold him its goods and had no communication with Mrs. Rosencranz for more than two months afterwards. It then wrote her and stated that Goldberg had assured it that she was willing to carry the indebtedness and not allow it to interfere with his paying his other creditors. Her debt was due. She had voluntarily agreed to indulge her debtor, but there was, so far as this record discloses, no consideration for this

promise. As between her and Goldberg it would not have prevented her suing him at any time, and would have constituted no defense to her action. She had made no agreement with his creditors not to collect her debt or to give them a preference.

It may be that, if to induce defendant to sell him goods she had agreed her debt should be made subordinate to any debt he contracted with it for goods on the strength of her agreement, she might have been estopped to claim her rights along with it, but it is apparent it did not act on any such an understanding, but sold him goods without obtaining any agreement or having any understanding with her.

We are cited by defendant to Bank v. Buck, 123 Mo. 141; but that case is easily distinguished from this in that there the debt and the absolute deeds given to secure it were kept secret, and Buck and McCrosky permitted to obtain credit from others who extended credit on the faith of their ownership of the property. Here the debt was announced before the goods were sold. No mortgage or other lien had been taken which would give Mrs. Rosencranz any advantage over any other creditor.

All that was represented was by the debtor, and that was that she was willing to indulge him and not prevent his paying others he owed. The element of secrecy and the taking of a deed which might operate to give her a superior lien is wholly wanting.

Rice v. Bunce, 49 Mo. 231, is also relied on, but in that case one having an equitable interest in land was present when it was put up for sale as the property of the person in whom the record showed title. He not only gave no notice of his title, but entered the list of bidders, and by his silence and acts, induced another to expend his money, whereas in this case Goldberg gave notice of the Rosencranz debt, and Mrs. Rosencranz did no act to induce defendant to extend him credit on the assumption that she would not enforce it. At most she

was represented as a creditor who was willing to be indulgent and not to crowd Goldberg.

Conceding the full force of the doctrine of estoppel, that one who neglects to speak shall not be heard to do so when his silence or acts have led another to act to his injury, we are unable to find any evidence upon which to estop plaintiff in this case. Her debt was not kept secret. She made no representation to defendant to induce it to sell its goods to Goldberg, and conceding she was willing to indulge her debtor she was in no manner bound to forego the collection of her debt. The cases all agree that there can be no estoppel unless the party who alleges it relied upon the representation, was induced to act by it and thus relying and induced did take some action. Giving now full scope to everything represented by Goldberg, it must have been apparent to any reasonable man contemplating extending him credit, that if he desired to estop Mrs. Rosencranz, something more than her mere gratuitous agreement with Goldberg was required to tie her hands so that she would not be at liberty to enforce her debt like his other creditors. Defendant was notified. It can not be heard to say in view of the evidence adduced by itself that the truth was unknown to it at the time it sold Goldberg and at the time it credited him. Mrs. Rosencranz asserted the debt which defendant was advised she held, and it knew the full extent to which she was bound not to enforce it, and that was a gratuitous agreement founded upon no consideration. It sought no greater security before it sold to him and obtained no more later. We do not think defendant established its estoppel even if it had been in position to do so. But if it had any equities or could invoke estoppel in a proper case, it can not do so here, for the reason that it stands in this record as a trespasser with no right or title to the property. It acquired no lien or title by its attachment proceedings in Kansas. Plaintiff was in the peaceable possession and if it desired to rely on its es-

toppel it should have proceeded not by trespass or force, but by invoking its claim in a court of justice. This defense is no more open to it than was the claim that Goldberg had sold and delivered the property to plaintiff to defraud his creditors. So far as this action is affected these two defenses stand in the same class.

Whatever the ''confusion'' which defendant pleads as an extenuation of the methods resorted to for the purpose of giving the Kansas courts jurisdiction, it must be said that plaintiff in no way contributed to it.

While we are satisfied defendant was only attempting to secure an honest debt, and that there was no wicked purpose in the various steps taken by it, still the courts can not countenance the extreme methods used in this case to confer jurisdiction on the Kansas courts over plaintiff's goods. However honest the debt, it can only be enforced in the courts by obtaining jurisdiction in the manner prescribed by the law of the land. The fact of jurisdiction may be inquired into and when obtained by fraud in fact or fraud in law, the judgment may be impeached collaterally.

This principle is well established in Parsons v. Dickinson, 11 Pick. 352; Wood v. Wood, 78 Ky. 624; Dunlap v. Cody, 31 Iowa 260; Duringer v. Moschino, 93 Ind. 495; Deyo v. Jennison, 10 Allen 410; Drake on Attachment, sec. 193; Byler v. Jones, 79 Mo. 263; Capital Bank v. Knox, 47 Mo. 333.

It results that the court erred in refusing plaintiff's instructions invoking the views we have expressed, and in giving those for defendant. The judgment is reversed and the cause remanded to be proceeded with in accordance with this opinion. All concur.