**TEXAS CO. v. CHICAGO & A. R. CO. ALTON R. CO. v. KANSAS CITY, ST. L. & C. R. CO. et al.**

No. 7643

Circuit Court of Appeals, Seventh Circuit.

Feb. 12, 1942.

Rehearing Denied March 26, 1942.

Silas H. Strawn and Frank H. Towner, both of Chicago, Ill., for appellant.

Clyde E. Shorey, Robert W. Schupp, and John E. Gavin, all of Chicago, Ill., and Watson Washburn, of New York City, for appellees.

Before SPARKS, MAJOR, and MINTON, Circuit Judges.

SPARKS, Circuit Judge.

The questions here presented arise out of the District Court's dismissal of appellant's petition in the receivership proceedings involving the railways and properties of The Chicago and Alton Railroad Company, hereinafter referred to as the Consolidated Company. Appellant, the assignee of the purchasers of the properties of the Consolidated Company, on June 10, 1940, filed its petition with the receivership court, together with its written election not to assume or adopt a lease agreement of March 15, 1878, as supplemented by an agreement of May 29, 1879, between the Kansas City, St. Louis and Chicago Railroad Company, a defendant here (referred to hereafter as the Kansas City Company), and the Chicago and Alton Railroad Company (hereinafter referred to as the Old Railroad Company), a predecessor of the Consolidated Company. The only question presented for our consideration is whether appellant was entitled to disaffirm the lease referred to.

The undisputed facts as alleged in the petition are that under the lease agreements the Kansas City Company leased all of its railways and properties, constructed and to be constructed, to the Old Railroad Company in perpetuity. The latter operated those properties as a part of its line of railroad up to March 8, 1906, at which time the Old Railroad Company and the Alton Railroad Company were consolidated to form the Consolidated Company. The latter operated the prop-erties of the Kansas City Company from March 8, 1906, to August 30, 1922. On the latter date the District Court appointed receivers for the Consolidated Company in a proceeding known as Texas Company vs. Chicago and Alton Railroad Company. At that time the lines operated by the Consolidated Company extended from Chicago to St. Louis and Kansas City, and the defendant, The Kansas City Company, covered by the leases herein involved, was that portion of the lines of the Consolidated Company lying between Kansas City and Mexico, Missouri.

Part of the estate of the Consolidated Company consisted of 30,000 shares of the preferred stock of the Kansas City Company, and 1576 shares of its common stock. These shares and the lease agreements referred to, and the interest of the Consolidated Company and its predecessors under those agreements were pledged as security under the various mortgages of the Consolidated Company and its predecessors.

The receivers operated the properties of the Kansas City Company as part of the Consolidated Company from the date of their appointment to July 18, 1931, when the properties of the latter were conveyed by deed to appellant. During the entire time the receivers paid all taxes, dividends, and other expenses required by the two lease agreements.

The only court orders entered in the receivership with respect to these payments were those of December 29, 1922, authorizing the payment of 1922 Missouri taxes, and of March 7, 1923, approving dividend payments theretofore made to stockholders of the Kansas City Company, and authorizing such further payments as were necessary to comply with the lease agreements.

The receivers made other expenditures on the line of the Kansas City Company. They paid the expense of a registrar and transfer agent for its capital stock. They expended money on grain elevators at Kansas City, owned by the Consolidated Company through the Alton Grain Elevator Company, also $75,000 on the Missouri River at Glasgow, Missouri, on the line of the Kansas City Company; they conveyed certain of its real estate to the State of Missouri for highway purposes; and they expended $1,718,485 in additions to and betterments of its line of railroad.

During all these actions of the receivers the receivership court reserved the right to renounce the lease agreements. On August 31, 1922, an order was entered by that court granting the receivers six months in which to determine which of the contracts and agreements entered into by the Consolidated Company they would adopt or renounce. On February 27, 1923, a similar court order was entered for the same purpose, extending the period of six months, and during the entire remaining period of the receivership the same right of the receivers was kept alive by similar orders for the purpose of considering what contracts of the Consolidated Company they would reject or assume. All of those orders provided that "none of the acts or omissions of the receivers in the performance or failure to perform any such contract, agreement or arrangement shall constitute an election by the receivers to adopt or an estoppel to renounce any of the same."

The order of March 7, 1923, authorized and directed the receivers to perform all the obligations, covenants and conditions to be performed by the Old Alton Company contained in each of four separate specifically named leases, dated respectively in 1864, 1870, 1878 and 1879. The latter two are the ones here involved and the order concluded with the following: "This order shall not be (considered) as an adoption of said leases; and the court hereby reserves the right in future to direct the Receivers to adopt or not to adopt the same as the court shall hereafter determine."

On July 6, 1929, a final decree was entered in the receivership proceeding. It recited the causes consolidated therein; provided for the sale of the property of the Consolidated Company; stated the liens subject to which the property should be sold including, to the extent stated in the decree, the lien of the refunding mortgage of the Old Railroad Company, dated October 1, 1899; and provided for the payment of costs. Included in the list of property to be sold were the railroad of the Kansas City Company and the two leases herein involved. The decree expressly provided that any purchaser of the property should have one year after delivery of the deed, *or such additional period as the court might thereafter permit,* in which to file in the clerk's office of that court its election in writing not to assume or adopt any contract, lease or agreement not fully performed, made or assumed by the Consolidated Company, or any predecessor company, and that no user of rights prior to the expiration of said period should be deemed to conclude the purchaser in respect to such election.[1]

Pursuant to this decree the property was sold to appellant's assignor. The court confirmed the sale and approved the deed to appellant. This decree recited the sale of the Consolidated Company as an entirety for $23,000,000 (that being the highest bid and in excess of the aggregate of the bids noted for the parcels compris-

---

[1] Article XX.
Disavowal of Contracts.
"Any purchaser of the property described in this decree, or of any parcel thereof, and whether or not he has exercised or used any rights thereunder, shall, subject to the provisions hereinafter specified, within one year after the delivery of the deed or deeds or other instrument or instruments of conveyance or assignment and transfer by the Special Master of the property purchased by him, or within such additional period as the court may hereafter by its order or decree permit, have the right to elect not to assume or adopt any lease, traffic, trackage, terminal, crossing or operating agreement, or other contract, not fully performed, made or assumed by the Consolidated Company, or any predecessor company (but not any contract, lease or agreement entered into, made, assumed or adopted by the Receivers which does · not expressly reserve to the purchaser the right to elect not to assume or adopt such contract, lease or agreement), which is part of the property embraced in such deed or deeds or other instrument or instruments of conveyance or assignment and transfer. Such election shall be made by instrument in writing, signed by the said purchaser and shall contain a general description of the contracts or leases which he elects not to assume or adopt, and shall be filed with the Clerk of this Court within the aforesaid period. No user of rights prior to the expiration of said period shall be deemed to conclude the Purchaser in respect of such election, and upon the filing of such election said Purchaser shall be deemed not to have assumed or adopted the said contracts or leases or rights therein described nor to be bound by the obligations of said contracts or leases;"

ing said property, when the parcels were offered for sale separately) and the assignment of the rights of the purchasers to appellant, subject to the provisions of the final decree. It also provided that the property sold should not be delivered to appellant until the Interstate Commerce Commission had authorized appellant to acquire it and to issue the securities required by the purchase. The deed incorporated the same provisions as the decree.

Appellant secured authority from the Interstate Commerce Commission to acquire and operate the properties of the Consolidated Company and to issue its own securities, and since the date of the deed of the special master, it has operated and managed them. Included in these properties are the leases, and the shares of preferred and common stock above referred to. Appellant operated the properties of the Kansas City Company as part of the properties acquired under the receivers' sale, and made all payments required by the leases involved up to May 1, 1939. During this period it paid $840,000 in dividends upon the guaranteed preferred stock of the Kansas City Company and $51,870 upon its common stock. Since that time it has paid nothing to the guaranteed preferred stockholders, and nothing to the common stockholders since November 1, 1937.

■ Appellant's petition avers under oath, which is admitted by the motion to strike, that since July 18, 1931, its operation of the properties of the appellee Railroad Company has not produced net revenue equal to the payments made by appellant, and the amounts so paid by it have been in excess of any reasonable value of the use of such railway and properties. Moreover, appellant was made defendant in twelve suits in the District Court, and in the Circuit Court of Cook County, Illinois, to recover $51,206.50 additional in unpaid dividends alleged to be due on the guaranteed preferred stock of the Kansas City Company.

Furthermore, appellant's right to elect not to assume or adopt any lease, operating agreement or other contract not fully performed, made or assumed by the Railroad Company was duly preserved by court orders. The original period of one year from July 18, 1931, was extended from time to time by orders in the receivership court, and at the time this cause was heard in that court the time for such election

did not expire until July 18, 1941. For the purpose of granting such orders inter alia, the July 1929, Equity Term of the receivership court, extended to July 6, 1932, by the final decree, was also extended from time to time, by the orders of that court, and at the time of the hearing that time would not expire until July 6, 1942.

The petition prayed that appellant's election to disaffirm be held effective as of July 18, 1931, which was the expiration date of the receivership; that appellant be authorized to discontinue the operation of the railway and properties of the Kansas City Company as soon as that company is in a position to resume possession and to undertake the operation of it; and that appellant's operation thereof after June 10, 1940, be held to be for the account of the Kansas City Company; that an accounting be had to determine the amounts owing by the Kansas City Company to appellant; and that the plaintiffs in the suits brought to recover dividends be enjoined from further prosecution of such suits until further order of the court.

Motions to strike appellant's petition were filed by appellee, the Kansas City Company, and a considerable number of individuals, partnerships and corporations claiming to be stockholders of that company. They were based upon the alleged grounds that appellant by its actions had affirmed and assumed the lease; that the user of the properties by the receivers constituted an assumption by them of the lease, and that the District Court had no authority to enter the various orders extending the time within which an election not to adopt the lease might be made by the purchaser.

■ With respect to the first ground, appellees urge that appellant's application to the Interstate Commerce Commission in connection with its acquisition of the railroad properties pursuant to the sale, and the subsequent certificate and orders of the Commission and appellant's operation of the entire line of railroad thereunder constituted an assumption of the lease. In support of this contention, appellees urge that the Baltimore and Ohio Railroad Company had joined with the Alton Railroad in a petition to the Interstate Commerce Commission for leave to acquire the properties of the Alton System on the basis of assuming the receiver's obligations, obtaining control of the Kansas City Company under the leases here

in issue, and by acquiring its controlling stock. They further urge that the B. and O. Company had agreed with the Commission to keep the line of the Kansas City Company in operation. The record does not support these contentions. The B. and O. Company was permitted by the Commission to acquire the stock of appellant, but the B. and O. Company made no application for, and received no authority from the Commission to assume the receiver's obligations or to acquire any stock of the Kansas City Company. The Commission did require that all routes and channels of trade by existing gateways be kept open. However, there was no requirement with respect to the continued operation by appellant of the Kansas City Company's line.

The District Court in its memorandum opinion stated that the proceedings before the Commission relative to appellant's request for authority to purchase and operate the properties covered by the decree did not of themselves constitute an adoption of the lease, and that the orders of the Commission with respect thereto were merely permissive. A reading of the record convinces us that this ruling was correct. However, that court observed that appellant's pleadings before the Commission, and its subsequent actions after the Commission's orders, should be considered in determining how the petitioner at that time regarded the lease. It further observed that such consideration does lend weight to the appellees' contention that appellant at the time of the proceedings before the Commission appeared to have regarded the lease as having been fully adopted by the receivers and passed on to appellant by the deed.

The District Court sustained the motion to strike on the second ground alone, and deemed it unnecessary to pass upon the third ground because of its ruling on the second.

██ Appellees' theory is that the receivers impliedly adopted the leases by their continued use of the properties and their payment of rentals during the entire period of the receivership. To support this contention they rely upon American Brake Shoe & Foundry Co. v. New York Railways Co., 2 Cir., 282 F. 523; Dayton Hydraulic Co. v. Felsenthall, 6 Cir., 116 F. 961; General Finance Corporation v. New York State Railways, 2 Cir., 54 F.2d 1008; North Kansas City Bridge & R. Co. v. Leness, 8 Cir., 82 F 2d 9, and analogous cases. These cases recognize the general rule that equity receivers are entitled to a reasonable time, if the court deems it necessary under the circumstances, in which to elect to adopt or renounce contracts. What constitutes such reasonable time is to be determined from all surrounding circumstances. None of the cases cited supports the proposition that there is an implied adoption by receivers of a contract through the use of properties covered thereby and the payment of rentals thereunder, where such use and payment is made under court orders expressly reserving the right of the receivers to renounce the contract notwithstanding such use and payment, and expressly providing that such use and payment should not constitute an adoption of the contract. The last two cases specifically referred to above were the only ones relied upon by appellees in which orders had been made by the court relating to the renunciation of agreements and fixing the procedure therefor. In each of those two cases the Circuit Court of Appeals held that the time granted was not unreasonable. However, the time granted was not so long, and the extensions were not so numerous as in the instant case.

██ Whether the time and the many extensions in this case were reasonable under all the circumstances of the various situations must be viewed in the light of the facts as they then appeared to that court, supplemented by the conduct of the parties now complaining. Every act now complained of was in strict compliance with the court's orders, and at no time did appellees or any of them make objection to any extension order, nor intimate to the receivership court that further time should not be granted. The reason for their inertia is obvious. The stockholders of the Kansas City Company, during those periods, were receiving their dividends regularly out of the rentals paid by appellant. So long as this practice continued it would have been poor business policy for the stockholders to ask the receivership court to refuse further extension of time, or to declare that appellant had impliedly assumed the contract. By so doing they might have lost heavily. By remaining silent they profited fully during the times when appellant's stockholders and creditors received comparatively nothing. They were not lulled into a sense of security by

the receiver's or the appellant's actions, or by the court's orders, as a result of which their position has changed to their damage, but rather into a sense of satisfaction because of their continuing profit.

Moreover, these orders of the court in extending the time of the receiver in which to assume or reject the contracts are clothed with the same sanctity as any other decree of court. They are unappealed from and we have no right to disregard them or to say that the court abused its discretion in its conception of a reasonable time under all the circumstances presented. It is true that the stockholders of the Kansas City Company were not parties of record to these extension orders, but they might have been had they so desired,[2] that is to say—some time during the nine years when these orders of extension were being regularly granted these stockholders might have addressed a petition to the receivership court for permission to intervene for the purpose of objecting to such extension. See Dayton Hydraulic Co. v. Felsenthall, supra; North Kansas City Bridge & R. Co. v. Leness, supra; and In re Chase Commissary Corporation, D.C., 11 F.Supp. 288. An abuse of the court's discretion in this respect would have been reviewable. This they did not do. They profited by the extensions, and will not now be heard to say, nor have we the power to say, under the circumstances here presented, that the court granted an unreasonable length of time to the receiver in which to reject the contracts.

It is further urged by appellees, on the question of implied adoption, that the receivers did not list the agreements here in issue as being subject to disaffirmance. It was not necessary that they should do so. The only evidence pertaining to this contention is that the receivers did file a statement showing the status of contracts, but there is no evidence that they were listed as agreements which the receivers could or could not disaffirm. It is also urged in this respect that the receivers were committed to preserve the property as an entirety, which fact required their adoption of these agreements with the Kansas City Company. There is no evidence to support this contention. The final decree authorized the sale of the property in parcels or as an entirety. It was offered for bids in both ways. It was sold as an entirety to the highest bidder because that bid was in excess of the aggregate of the bids for the parcels. In this there was no commitment of the receivers to preserve the property as an entirety, or to adopt the agreements here in issue. It is further contended in support of the theory of implied adoption that the receivers always had ample funds with which to pay dividends on the stock of the Kansas City Company. It is quite true that appellant always paid the rentals pursuant to the leases, out of which the dividends were paid by the Kansas City Company to its stockholders. However, the receivership court found in its final decree that during the entire period of the receivership of the Consolidated Company there was not enough revenue realized to pay the amounts due upon its mortgages, and for this reason the property was ordered sold.

Appellees further contend that appellant, by its operation of the leased property since its purchase from the receivers, with full payment of rent pursuant to the leases, without renunciation or notice, is estopped to maintain that the contract in issue did not become its contract. A necessary element in equitable estoppel is that the person claiming it must have been mislead into such action and that he will suffer injury if the estoppel is not declared. See Hefner v. Vandolah, 57 Ill. 520, 11 Am.Rep. 39; Barnett v. Kemp, 258 Mo. 139, 167 S.W. 546, 52 L.R.A.,N.S., 1185. That is to say, the person setting up the estoppel must have been induced to alter his position (Rosencranz v. Swofford Bros. Dry Goods Co., 175 Mo. 518, 75 S. W. 445, 97 Am.St.Rep. 609; Conrad v. Fisher, 37 Mo.App. 352, 8 L.R.A. 147), in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated. Driskell v. Mateer, 31 Mo. 325, 80 Am.Dec. 105; Garesche v. Levering Inv. Co. 146 Mo. 436, 48 S.W. 653, 46 L.R.A. 232. Furthermore, an equitable estoppel can not arise except when justice

---

[2] "Article XXV * * * Any party to the above entitled causes or any thereof, or any claimant or other person whose rights are affected or determined by any of the provisions of this decree, may at any time apply to this Court for such orders and directions touching the matters hereby reserved or for such further or other relief as the Court may deem just and proper."

to the rights of others demands. It was never intended to work a positive gain to a party. See Notes, 17 Am.St.Rep. 24; 25 Am.St.Rep. 330. Its whole office is to protect him from a loss, which but for the estoppel, he could not escape. In other words, an estoppel should be limited to what may be necessary to put the parties in the same relative position which they would have occupied if the predicate of the estoppel had never existed. Phillipsburgh Bank v. Fulmer, 31 N.J.L. 52, 86 Am.Dec. 193.

If the predicate of the estoppel here sought had never existed, appellees would be in no better or different position than they would be if the estoppel were now denied. Hence we say that appellant is not estopped to maintain that the agreements in issue did not become its contract. We are therefore confronted with the same question as heretofore discussed with respect to the receivers, that is—did appellant by its acts and conduct impliedly accept as its own the agreements in issue. Here again appellees fail to discuss or recognize the orders of the receivership court with respect to the extensions of time. For the same reasons there given we hold that appellant did not impliedly or otherwise assume the leases in issue. In support of their contention to the contrary appellees rely on Wiggins Ferry Co. v. Ohio & Mississippi R. Co., 142 U.S. 396, 12 S.Ct. 188, 35 L.Ed. 1055; Taenzer & Co. v. Chicago, R. I. & P. R. Co., 6 Cir., 170 F. 240; Swift & Co. v. Detroit Rock Salt Co., 6 Cir., 233 F. 231; Wilson & Toomer Fertilizer Co. v. American Cyanamid Co., 5 Cir., 33 F.2d 812. The facts involved therein are far different from those presented here, and we think the cases are not in point.

Furthermore, appellees urge that the payment of dividends to the company's stockholders and the expenditure of money by appellant on the betterment of the Kansas City Company's line of railroad lulled them into the belief that the agreements had been assumed by appellant, and that it would now be inequitable to permit a disaffirmance and the recovery of damages by appellant. We are not now dealing with the determination of damages, but rather with appellant's right to be heard on that question at the hearing on the merits, which hearing the District Court denied by dismissing the petition. Appellant has not sought, **nor is** it now seeking, to discontinue the operation of the Kansas City line. It merely avers the lack of obligation upon appellant to continue the operation of it subsequent to June 10, 1940. However, it asserts its willingness to continue such operation for the account, and at the risk, of that company until it is willing to take the properties over. Under these facts we think the cases relied upon by appellees are inapplicable.

Appellees further contend that the blanket court order of February 27, 1923, and several orders entered at six months intervals did not operate as to the lease in issue, as this lease was made the subject of the special and specific order of March 7, 1923. In all of these orders no exceptions were made. The order of March 7, 1923, made special reference to the lease in issue and others, and the undisputed evidence discloses that this was done because certain expenditures made and proposed to be made were deemed to require special emphasis and a special order. However, that order was quite definite in reserving to the court the right thereafter to direct the receivers to adopt or disaffirm the lease, as to it might seem best. We think there is no merit in this contention.

Appellees further contend that the decree which granted a limited time for disavowal of contracts in general had no application to the lease here in issue. The argument is that had the court intended granting such right with respect to the lease it would have specifically referred to such lease. On the contrary, where all of a class are referred to generally, as in the decree, all are included unless specifically excepted. We think there is no merit in this contention.

Appellees further urge that since the refunding mortgage of the Consolidated Company was assumed by appellant, an application to the Commission for authority to discontinue operation of the Kansas City Line should have preceded disaffirmance of the leases. Hence they argue that had the court intended to grant the right to disaffirm the leases it would have made that right dependent upon a prior authority from the Commission to discontinue operation of the Kansas City Line. One sufficient answer to this argument is that the record does not disclose that appellant ever assumed the refunding mortgage of the Consolidated Company. An-

other complete answer is that the right to discontinue operation was not necessary to a disaffirmance. Either could exist without the other.

 Appellees further urge that the B. and O. Company as holder of all the stock of the Alton, and the latter as owner of the majority stock of the lessor company, are chargeable with the fiduciary duty to exercise the utmost good faith in all dealings affecting the Kansas City Company. This is unquestionably true. However, nothing was done in this case by appellant, or the B. and O. Company, or the receivers that was not consistent with and in strict accordance with the decrees of the receivership court which had full knowledge of all the facts. Moreover, appellees during all this time sat by and never raised a voice to the court or to the receivers in opposition to the procedure. Under these facts which are not controverted, we think there is no merit in the contention.

Appellees further contend that the final decree and deed only permitted one extension of the equity term of the District Court for July, 1929. This contention is based on appellees' construction of Article XXV of the decree under the heading "Matters reserved."[3] Their construction is that since the provisions for extension are in the singular only one extension could be granted. The record discloses that only one extension was granted upon each application, and there seems to be no prohibition against more than one application. It will be noted that the final decree extended the term for the purposes of the proceeding for three years. Within that time it was again extended for two years, and every subsequent extension was granted within the period of the last preceding extension. It will be further noted that the final decree contemplated the continued extension of the term until the decree was completely executed, and that time is still in futuro. Moreover, the receivership court, by its subsequent orders, has construed the quoted portion of its decree precisely in conformity to appellant's procedure. That it had a right to do, and we, as well as appellees, are bound by it. The cases relied upon by appellees in support of this contention are not at variance with our conclusion, and we cannot sustain appellees' position in this respect.

 Lastly, appellees contend that appellant's petition is without equity on its face, and that it was filed too late. This, in effect, raises the same questions hereinbefore discussed. For the reasons already stated this contention can not be sustained. If there be allegations of damage which should be more particularly itemized this should be done at the hearing on the merits.

The decree of the District Court is reversed, and the cause is ordered remanded for further proceedings not inconsistent with this opinion.

---

3 "Article XXV. Matters Reserved. * * * For the purposes of the above entitled causes the present Equity Term of this Court is extended until after the complete execution of the provisions of this decree, and of any decree supplementary to or modifying the same, and until after the final determination and disposition of all matters herein reserved for future determination or action by the Court, and said Equity Term is extended in any event for a period of three years from the date of this decree with leave to any party to the above entitled causes, or any thereof, at any time prior to the expiration of said period of three years, to apply to this Court for a further extension of said Term. * * *."