**LANDSMAN v. UNITED STATES.**

No. 4031–51.

United States District Court,
District of Columbia.
Civil Division.
June 6, 1952.

Geiger & Harmel, Paul R. Harmel, Washington, D. C., for plaintiff.

Charles M. Irelan, U. S. Atty., D. Vance Swann, Harold H. Fischer, Onan A. Hydrick, all of Washington, D. C., for defendant.

LETTS, District Judge.

This is an action for the recovery of insurance proceeds brought by the plaintiff as beneficiary named in two $5000 National Service Life Insurance policies, issued by the defendant upon the life of Frank I. Landsman at a time when he was in the military service.

The following facts are established and are without dispute in the record: the insured entered on active duty in the military service of the United States on April 21, 1942; effective May 1, 1942, the insured applied for and was granted two $5000 policies of National Service Life Insurance (identified by Certificate Nos. N–2 273 031 and N–2 831 426); premiums on the entire amount of insurance were paid through December 31, 1945; on December 28, 1945, the insured executed an application for the conversion, effective January 1, 1946, of a $2000 portion of the insurance issued to him under Certificate No. N–2 273 031, to a policy on the 20 payment life plan designating the plaintiff as the sole beneficiary thereof; thereafter he was issued Certificate No. V–257 285 in the amount of $2000 on the plan selected by him and premiums were paid thereon until the time of his death which occurred on July 20, 1948; the proceeds of this policy were paid to the designated beneficiary, and is in no way involved in this litigation; no further premiums were paid after December 31, 1945, on the remaining $3000 insurance issued to the insured on the Certificate No. N–2 273 031 or on the $5000 insurance issued under Certificate N–2 831 426, and said insurance in the aggregate amount of $8000 lapsed on account of the nonpayment of the premiums due on January 1, 1946; the insured never filed an application for waiver of the payment of any premiums; on October 25, 1948, the plaintiff filed a formal application for waiver of premiums, alleging that the insured was totally disabled from October 1, 1945, by reason of Hodgkin's disease; this application was disallowed by decision dated January 17, 1949, but it was held that the insured was continuously totally disabled for insurance purposes from June 7, 1948, when his insurance was not in force on a premium paying basis, until his death; in a supplemental decision dated October 29, 1951, the Veterans' Administration held that the insured's failure to file a timely application for a waiver of premiums was not due to circumstances beyond his control.

The record clearly indicates that the veteran was physically disabled from the time of his discharge from the army until his death. He became afflicted with Hodgkin's disease while in the service; the disease was well advanced at the time of the veteran's discharge in October, 1945, and was the cause of his death; the veteran was never aware of his true physical condition; the hospital supervisors knew his true physical condition and retained him on the payroll until his death solely because of his excellent pre-war record; before his true condition was diagnosed the doctors had treated him for sinusitis and grippe; such circumstances plus his youth, he was only 31 years of age when he died, combined to create a delusion that he was not totally disabled and that his disability was only temporary; that the veteran was not aware of his true condition is evidenced by the fact that he planned to become an engineer; had a child and had converted his $10,000 ordinary policies to a $2000 twenty year endowment policy. The record is replete with evidence that the veteran's disease was progressive and was attended by high fevers, drenching sweats, aches and pains in his hips, shoulders and arms, frequent spells of diarrhea and vomiting, lumps in his neck and under his arms. The foregoing is a mere summary of the evidence bearing on the insured's physical condition.

The evidence having relation to the insured's mental state is fragmentary if not negligible; it appears that he was subject to frequent outbursts of temper; that he appeared irritable and could not carry

on friendly conversations; that he engaged in frequent quarrels and that sometimes he was found to be in a stuporous state. It appears that he lost interest in athletics, movies and social life. As a matter of legal concept such disclosed facts may not be given probative value in determining mental competency and they do not present a factual issue as to the circumstances attending insured's failure to file a timely application for waiver of premiums. The Fifth Circuit in Aylor v. U. S., 1952, 194 F.2d 968, 970, said "We think that, in order for an insured person to claim a condition of health as 'circumstances beyond his control,' it must be shown that he was mentally incapable of making an application for waiver." In that case there was testimony by the doctor who examined the insured on two occasions after the latter was discharged from the military service; a former employer of the insured; the appellant who was the insured's mother; and the wives of the insured's two brothers. Such witnesses other than the doctor testified to the effect that the insured took very little interest in life, was always drowsy and tired, did not appear to comprehend the seriousness of his condition, and was generally indifferent to everything, a condition that was contrary to his pre-military personality. The doctor testified that he had diagnosed the insured's ailment chronic glomerular nephritis, a disease which totally disabled the insured, and which affected his mental condition to the extent that he could not think clearly and had an indifferent or disinterested attitude toward living, but that he was not irrational at the time of the examination, though persons suffering from such disease would become irrational in the later stages of the disease.

The court commenting upon such evidence said "In considering all of the evidence on the question, and taking the most liberal view of it, we fail to see that there was sufficient evidence to take to the jury the question of whether the insured was mentally incapable of making an application for waiver of his insurance premiums."

It would seem that the evidence in the Aylor case as to mental incapacity or in-stability was much stronger on such question than is the evidence in the instant case. Upon that issue the plaintiff, Mrs. Landsman, must fail.

█ The plaintiff points out that prior to August 1, 1946, Section 617 of the National Service Life Insurance Act, 38 U. S.C.A. § 817, the decision of the Administrator as to waiver or nonwaiver of premiums under 802(n) shall be conclusive and binding on the court; and that in the Act of August 1, 1946 Congress deleted such proviso.

Plaintiff contends that it was the purpose of Congress to authorize trial by jury in any case in which a claim for insurance benefits is denied. It may be noted that Senate Report No. 1705, July 12, 1946, U.S. Code, Congressional Service, 1946, page 1402 carries language which if read out of context might well lead to plaintiff's conclusion as to the Congressional intent. However on the same page of the Report and as a concluding phrase it is said "Your committee is of the opinion that the right of judicial review should be extended in any case in which there is disagreement as to any alleged right under the contract." It will be noticed that the committee was thinking of a judicial proceeding and not necessarily of a trial by jury. In Jensen v. United States, D.C., 94 F.Supp. 468, 471 the court said "By the amendment of August 1, 1946, Congress clearly showed its intention that the question of the right to a waiver of premium should be determined by a court and a jury."

It seems clear that the Congress by the amendment of August 1, 1946 intended to take from the Administrator of Veterans' Affairs the right to decide with finality questions of waiver and non-waiver. It seems apparent that Congress intended to supplant administrative finality by a court decision reached by ordinary procedure. The court thinks that plaintiff's contention that she is entitled as a matter of law to a jury verdict is without merit.

The defendant's motion for summary judgment will be granted. Counsel for defendant will present an appropriate order.