**LANDSMAN v. UNITED STATES.**

No. 11519.

United States Court of Appeals
District of Columbia Circuit.

Argued Jan. 30, 1953.

Decided May 21, 1953.

Proctor, Circuit Judge, dissented.

Mr. Paul R. Harmel, Washington, D. C., with whom Mr. Irwin Geiger, Washington, D. C., was on the brief for appellant.

Mr. Russell Chapin, Attorney, Department of Justice, Washington, D. C., pro hac vice, by special leave of Court, with whom Mr. Charles M. Irelan, U. S. Atty., Washington, D. C., at time of argument, was on the brief, for appellee. Mr. William R. Glendon, Asst. U. S. Atty., entered an appearance for appellee. Mr. Joseph M. Howard, Asst. U. S. Atty., Washington, D. C., at time record was filed, also entered an appearance for appellee.

Before PROCTOR, BAZELON and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

This litigation was brought to obtain recovery on a policy of national service life insurance which lapsed prior to the death of the insured on account of non-payment of premiums. The basis of plaintiff-beneficiary's claim is that she is entitled to retroactive waiver of all premiums in default, by virtue of the provisions of Section 602 (n) of the National Service Life Insurance Act of 1940.[1] That section provides that "Upon application * * * payment

of premiums on such insurance may be waived [by the Administrator of Veterans' Affairs] during the continuous total disability of the insured, [lasting six or more consecutive months] * * * *Provided* [thirdly] * * *, That in any case in which the Administrator finds that the insured's failure to make timely application[2] for waiver of premiums * * * was due to circumstances beyond his control, the Administrator may grant * * * waiver of premiums * * *."

Frank I. Landsman, after entering military service in 1942, applied for and obtained two $5,000 policies of national service life insurance. In December 1945 he applied to have $2,000 of his insurance converted to an endowment policy. This was done, effective January 1, 1946, and from that time on premiums were regularly paid on this $2,000 policy. The remaining $8,000 of insurance was allowed to lapse, no premiums being paid on it in 1946 and the following years. On July 20, 1948, the insured died. Promptly thereafter his widow, the appellant, filed an application for waiver of premiums with the Veterans' Administration, as beneficiary under the lapsed $8,000 of insurance.[3] This application was disallowed by the Veterans' Administration.[4] Suit was filed by Mrs. Landsman in the United States District Court for the District of Columbia in 1951. In her amended complaint, plaintiff alleged that the insured became totally disabled on or about October 1, 1945, and remained totally disabled until his death, as a result of having contracted Hodgkin's disease during his military serv-

1. 54 Stat. 1011, as amended, 38 U.S.C.A. § 802(n). The concluding passage of the language quoted in the text is known as the "third proviso" of the section. It was added by amendment, through the Act of July 11, 1942, 56 Stat. 657.

2. The Act sets forth a number of time limitations, not material here, since insured filed no application during his lifetime. As to applications by beneficiaries, such as the present plaintiff, see footnote 3, infra.

3. The "fourth proviso" of Section 602(n) provides "That in the event of death of the insured without filing application for

waiver, the beneficiary, within one year after the death of the insured * * * may file application for waiver with evidence of the insured's right to waiver under this section." This proviso confers no greater right on the beneficiary than the insured had at the time of his death. Aylor v. United States, 5 Cir., 1952, 194 F.2d 968; United States v. Baker, 10 Cir., 1951, 191 F.2d 1004; Scott v. United States, 5 Cir., 1951, 189 F.2d 863, certiorari denied 342 U.S. 878, 72 S.Ct. 169, 96 L.Ed. 660.

4. On the ground that insured was not totally disabled as of the date on which the policy lapsed.

ice; that failure of the insured to file an application for waiver of premiums was due to circumstances beyond his control in that he had no knowledge that he was totally disabled or that he was afflicted with an incurable disease, and in that he "was not in full possession of his mental faculties and was frequently found to be in a stuporous state out of which it was necessary to arouse him." The defendant-appellee moved for summary judgment. In opposition to this motion numerous affidavits were filed on behalf of plaintiff. The Government did not challenge plaintiff's version of the facts: in effect, it demurred.

█ The District Court filed an opinion in which it appeared to conclude that the insured had been totally disabled, without awareness of the fact, since before the date of lapse of the insurance in question.[5] It nevertheless granted defendant's motion for summary judgment, on the ground that insured's failure to file timely application for waiver of premiums could not be excused as "due to circumstances beyond his control."[6] It apparently construed the third proviso as permitting late filing only where the insured is mentally incompetent.[7] On this issue, it said that "The evidence having relation to the insured's mental state is fragmentary if not negligible; it appears that he was subject to frequent outbursts of temper; that he appeared irritable and could not carry on friendly conversations; that he engaged in frequent quarrels and that sometimes he was found to be in a stuporous state. It appears that he lost interest in athletics, movies and social life. As a matter of legal concept such disclosed facts may not be given probative value in determining mental competency and they do not present a factual issue as to the circumstances attending insured's failure to file a timely application for waiver of premiums."[8] Summary judgment for the defendant followed.[9] The plaintiff appeals from that judgment.

5. "The record clearly indicates that the veteran was physically disabled from the time of his discharge from the army until his death. He became afflicted with Hodgkin's disease while in the service; the disease was well advanced at the time of the veteran's discharge in October, 1945, and was the cause of his death; the veteran was never aware of his true physical condition; * * * before his true condition was diagnosed the doctors had treated him for sinusitis and grippe; such circumstances plus his youth, he was only 31 years of age when he died, combined to create a delusion that he was not totally disabled and that his disability was only temporary; that the veteran was not aware of his true condition is evidenced by the fact that he planned to become an engineer; had a child and had converted his $10,000 ordinary policies to a $2000 twenty year endowment policy. The record is replete with evidence that the veteran's disease was progressive and was attended by high fevers, drenching sweats, aches and pains in his hips, shoulders and arms, frequent spells of diarrhea and vomiting, lumps in his neck and under his arms." 105 F.Supp. at page 377. Plaintiff alleged, without denial by the Government, that the insured consulted many physicians; that his employers did not realize his actual physical state, but kept him on the payroll because of his excellent

pre-war record; and that his true condition was not diagnosed until he was on his death bed.

6. This defense was interposed by the Government (see Renewal of Motion for Summary Judgment, filed April 8, 1952) on the basis of an *ex parte* administrative determination, made after this suit was commenced, that the insured's failure to file timely application for waiver of premiums was not due to circumstances beyond his control. In this appeal, plaintiff contends, in effect, that the Government is estopped to claim this defense, since the Veterans' Administration originally considered her application for waiver of premiums on the merits (see fn. 4). We do not reach this contention. But see Aylor v. United States, supra note 3.

7. See 105 F.Supp. at page 378. The court cites and relies upon Aylor v. United States, supra note 3, discussed later in this opinion.

8. 105 F.Supp. at pages 377–378.

9. Appellant seriously urges that the court erred for two reasons in granting this motion: (1) she claims a statutory right to jury trial of the question whether the insured's failure to apply for waiver of premiums was "due to circumstances beyond his control"; (2) she contends that, even under the narrow construction of "circumstances beyond control" adopt-

If the mental competency of the insured were the sole issue in the case, we might well agree with the District Court that the pleadings and affidavits did not present a genuine issue as to any material fact and that defendant was entitled to judgment as a matter of law. But the complaint was framed to rely not only on the mental incompetency of the veteran but also on his ignorance of the nature and probable course of his disease. And plaintiff strongly urges on appeal that, mental competency aside, the insured's ignorance of his condition is sufficient to constitute a circumstance beyond his control which excuses his failure to file timely application for waiver of premiums.

The Government urges that "circumstances" are beyond the insured's control, within the meaning of the statutory language, only when the insured is mentally incompetent. In support of this view it relies primarily upon the legislative history. It places particular emphasis on a communication to Congress from the Veterans' Administrator, in reference to a draft bill to amend the Act.[10] Analysis of that communication impairs, rather than supports, the Government's position. In it, the Administrator speaks of "those who are captured, besieged, or otherwise isolated by the forces of the enemy * * * and who are unable, by reason of circumstances of which they have no control, to apply" for insurance protection. He was there discussing the limited cost-free life insurance available to those who had not previously applied for any insurance, but who had suffered total disability in line of duty. In the next sentence he goes on to say:

"Further, it is believed there should be a definite limitation upon the time in which insurance protection, or benefit under such provisions may be claimed, and that there should be relief for those who through legal or mental incompetence are unable to apply within the limited time."

It seems clear enough that "legal or mental incompetence" meant something quite different to the Administrator from "circumstances of which [a person has] * * * no control." That becomes even more clear when we pass to the part of the letter in which he discusses the matter now at hand —failure of persons who were, or had been, already insured to make timely application under Section 602(n) for waiver of premiums, on grounds of total disability. Here he said that such failure should be excused when "due to circumstances beyond the control of the insured." He does not attempt to explain this expression—though his previous reference to those "captured, besieged, or otherwise isolated" may throw some light on it. But evidence of a desire on the part of the Administrator to restrict the coverage of the third proviso solely to cases of mental incompetency seems entirely lacking.[11] Much less can we conclude that Congress itself had any such desire.

The Government also relies (as did the District Court) on a statement by the Fifth Circuit in Aylor v. United States [194 F. 2d 970], supra note 3, to the effect that "in order for an insured person to claim

---

ed by the court, a genuine issue of fact was raised by the pleadings. Our disposition of the case makes it unnecessary to rule upon the latter contention. As to the first, we agree with the District Court that cases such as the present are to be tried according to the usual procedures, with no absolute right to go to the jury. See 105 F.Supp. at page 378.

10. Letter dated May 14, 1942, from the Administrator to the President of the Senate, set forth in Sen.Rep.No. 1430, 77th Cong., 2d Sess. The report accompanied S. 2543, which became the Act of July 11, 1942, 56 Stat. 657. That Act contained the third proviso here discussed.

11. Two years later, on June 15, 1944, the Administrator wrote another letter to the President of the Senate, urging adoption of the fourth proviso (supra note 3). In the course of the letter, he stated that "In certain cases it appears that failure to make timely application was due to the mental incompetency of the insured. * * *" Sen. Rep.No. 1105, 78th Cong., 2d Sess. This letter adds nothing to the Government's case.

a condition of health as 'circumstances beyond his control,' it must be shown that he was mentally incapable of making an application for waiver." But that statement could hardly have been intended to endorse the limited interpretation of the third proviso which the Government urges here. The Aylor case did not involve ignorance of the fact of disability. The court was there concerned with a known condition of health, correctly diagnosed, and with a claim of consequent mental incapacity. We think its holding stands simply for the proposition that where mental incapacity is relied on as grounds for relief, such incapacity must be shown.[12]

We conclude, therefore, that the narrow interpretation urged by the Government must be rejected. Congress did not speak simply of cases where the insured was mentally incompetent.[13] It spoke of "any case" in which the insured's failure to make timely application for waiver of premiums "was due to circumstances beyond his control." The meaning of those words must not be unnaturally restricted.[14] If, as the Government argues, difficulties in administration result from adoption of a broader interpretation than the one it contends for, the remedy lies with Congress.[15]

Giving the phrase "circumstances beyond * * * control" its fair meaning, free of artificial restriction, we think that ignorance of the existence or seriousness of an injury or disease may in a proper case constitute such a circumstance—if the ignorance is in fact beyond control. Here, the plaintiff in substance alleges that the insured consulted physicians, freely revealed his symptoms, and was guided by the advice received: but that his true condition was not diagnosed until he was on his deathbed. We think that on these allegations it was error to conclude as a matter of law that the insured's failure to apply for waiver of premiums was unexcused. Defendant's motion for summary judgment should not have been granted.[16]

The judgment of the District Court will accordingly be

12. Cf. United States v. Cooper, 6 Cir., 1953, 200 F.2d 954; Novak v. United States, D.C.W.D.Pa.1952, 107 F.Supp. 151; Allen v. United States, D.C.S.D. Tex.1952, 103 F.Supp. 455; Jensen v. United States, D.C.Utah, 1950, 94 F.Supp. 468. See also Scott v. United States, supra note 3 (insured's ignorance of the provisions of the statute, and of his rights thereunder, does not excuse his failure to meet statutory requirements). That case involved ignorance of the law, as opposed to ignorance of the fact of disability.

13. As it did in another part of the same section of the Act: Section 602(d) (5).

14. If there were room for dispute, the humanitarian nature of the legislation would point to a liberal interpretation, in aid of the veteran. See United States v. Zazove, 1948, 334 U.S. 602, 68 S.Ct. 1284, 92 L.Ed. 1601: "The statutory provisions, where ambiguous, are to be construed liberally to effectuate the beneficial purposes that Congress had in mind." 334 U.S. at page 610, 68 S.Ct. at page 1288. See also Thomas v. United States, 6 Cir., 1952, 189 F.2d 494, certiorari denied 342 U.S. 850, 72 S.Ct. 78, 96 L.Ed. 641, rehearing denied 343 U.S. 932, 72 S.Ct. 756, 96 L.Ed. 1341.

15. We note that workmen's compensation statutes frequently provide that tardy claims may be accepted where "good cause" is shown or where there was "mistake" or similar excuse. Numerous cases arising under such legislation hold that ignorance of the existence of an injury or disease, or of its seriousness, constitutes such excuse. Hoage v. Employers' Liability Assur. Corp., 1933, 62 App.D.C. 77, 64 F.2d 715; American Rolling Mill Co. v. Stevens, 1942, 290 Ky. 16, 160 S.W. 2d 355, 145 A.L.R. 1256; Texas Employers' Ins. Ass'n v. Clark, Tex.Civ. App.1929, 23 S.W.2d 405; Vandalia Coal Co. v. Holtz, 1918, 68 Ind.App. 670, 120 N.E. 386; Annotation, 145 A.L.R. 1263. We are not aware of any undue difficulty in administration caused by such provisions.

16. If the plaintiff is to prevail ultimately, she must of course establish not only that the insured failed to apply for waiver of premiums due to circumstances beyond his control, but also that he was totally disabled within the meaning of the statute. This aspect of the case was not argued before us and we make no comment concerning it.

Reversed and the cause remanded for proceedings not inconsistent with this opinion.

PROCTOR, Circuit Judge (dissenting).

The facts presented by appellant (plaintiff) on the motion for summary judgment do not, in my opinion, constitute circumstances beyond assured's control preventing him from applying for a waiver of premiums; therefore the summary judgment in favor of the United States should be affirmed. However, I do not wish to be understood as agreeing with the trial judge's view that mental incapacity is the only circumstance which might put it beyond an assured's control to make timely application for waiver of premiums. It is conceivable that some physical obstacle, restraint, or disability might render it impossible for an assured to make timely application for waiver.