**Eleanor Miles KERSHNER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 13926.**

United States Court of Appeals
Ninth Circuit.

Sept. 22, 1954.

Gerald J. Meindl, Portland, Oregon, Melvin Goode, Courtney R. Johns, Albany, Oregon, for appellant.

Warren E. Burger, Asst. Atty. Gen., Samuel D. Slade, Russell Chapin, T. S. L. Perlman, Dept. of Justice, Washington, D. C., C. E. Luckey, U. S. Atty., Eugene, Ore., Victor E. Harr, Asst. U. S. Atty., Portland, Oregon, for appellee.

Before HEALY, POPE and CHAMBERS, Circuit Judges.

CHAMBERS, Circuit Judge.

Floyd Lewis Kershner was a World War II veteran. Eleanor Miles Kershner, plaintiff and appellant, is his surviving mother and the designated beneficiary under her son's National Service Life Insurance Policy in the amount of $10,000.

It is agreed that Kershner was honorably discharged from the Navy on March 14, 1946; that premiums were paid on the policy to April 10, 1946; and that by March 10, 1946, the veteran had become totally disabled in that it was impossible from that time forward for him to follow continuously any substantial gainful occupation up to the time of his death on November 16, 1949, three years and seven months later.

The record further shows that from the time of his discharge to his death Kershner was in and out of Veterans' Administration hospitals in various parts of the country. He must have known that his physical condition was not good. He was suffering from chronic myelogenous leukemia, from which he eventually died. The record seems to confirm the mother's contention that the government doctors at all times after the discharge considered the veteran's case almost hopeless but, probably wisely from a medical standpoint, chose to encourage him to believe there was real hope for an eventual recovery.

After Kershner's discharge from the service, when not in government hospitals he seems to have doggedly tried to work at one job and another. Also, he went to college for a short time under the vocational training program of the Veterans' Administration.

After six months of continuous total disability under 38 U.S.C.A. § 802(n), the veteran could have obtained a waiver of all premiums on his policy by the simple act of applying for it.[1] This plain, easy thing he did not do. Why? From the record, no one can say.

The district court denied recovery to the plaintiff beneficiary.

The beneficiary bases one contention on the last clause of 38 U.S.C.A. § 802(n), which is as follows:

"And provided further, That in the event of death of the insured without filing application for waiver, the beneficiary, within one year after the death of the insured or August 1, 1946, whichever be later, * * * may file application for waiver with evidence of the insured's right to waiver under this section. * * * *"

This section she would interpret to say that if the deceased veteran at any time could have obtained a waiver of premium and thereby kept in effect an otherwise lapsed policy, then the beneficiary would have a right within a year after death of the insured to make application for waiver of premium.

---

[1]. In the ordinary case, by the provisions of 38 U.S.C.A. § 802(n), application for waiver of premium should be made within one year after (1) the onset of the total disability, or (2) the date when the last premium became due, whichever is later.

However, this court accepts the construction generally placed on the foregoing quoted clause and subscribes to the announced decisions that before a beneficiary can assert the privilege therein contained the right to a waiver must have existed in the veteran on the date of his death. Scott v. United States, 5 Cir., 189 F.2d 863, certiorari denied 342 U.S. 878, 72 S.Ct. 169, 96 L.Ed. 660; United States v. Baker, 10 Cir., 191 F.2d 1004; Huckaby v. United States, 5 Cir., 196 F.2d 307; United States v. Cooper, 6 Cir., 200 F.2d 954. To hold otherwise might permit a beneficiary of a lapsed policy to recover thereunder even in a case where there was an affirmative showing that a competent, fully informed veteran didn't want his insurance continued in force, even if he could have had it free. Chiefly, however, the legislative history of the section wherein one clause of the section was added at a time would seem to indicate the purpose of the clause was to give a beneficiary time both to investigate and to act, if the veteran immediately preceding death could have acted. Further, to accept such an interpretation as plaintiff contends for would no doubt subject the government to a torrent of claims, and before acceding to such a construction there should be a clearer showing of congressional intent to distribute government largess.

But there is an earlier "provided" in the same section 802(n) which presents a closer question. This "provided" is as follows:

"Provided further, That in any case in which the Administrator[2] finds that the insured's failure to make timely application for waiver of premiums or his failure to submit satisfactory evidence of the existence or continuance of total disability was due to circumstances beyond his control, the Administrator may grant waiver or continuance of waiver of premiums."

The key words for construction are "circumstances beyond his control."

Was the assured's failure to make application for a waiver due to circumstances beyond his control? The trial court, seemingly relying on Landsman v. United States, 105 F.Supp. 376, a decision of the United States District Court for the District of Columbia, held against the beneficiary. While this Kershner case has been on appeal, Landsman has been reversed, 92 U.S.App.D.C., 276, 205 F.2d 18, and certiorari denied, 346 U.S. 876, 74 S.Ct. 127.

■ Of course, if there is an ambiguity or doubtful language in an insurance contract, whether private or governmental, language is and should be construed against him who wrote it.

A further reason for generosity in favor of the veteran is the beneficent approach in recent years of the whole government to the veteran. It has been that of the patron who says, "Put yourself in my hands. Don't worry. I'll take care of you." Only after the veteran or his beneficiary has waked up in an administrative cul de sac is it ever indicated to the veteran that a little independent advice might have been a good thing. Such is not the atmosphere in which a policy is bought from a private company or continued in force.

It is not incumbent on this court to furnish now a full list of what may be eventually held to be "circumstances beyond the control" of the veteran. The words probably would excuse the shipwrecked sailor stranded on an island, which is the classic example. It probably would excuse one imprisoned in a distant unfriendly land, and no doubt protect the man totally insane.

■ The underlying thought of Congress must have been, when it used "circumstances beyond his control," to cover cases where the veteran was deprived of a chance, disability existing, to make a free or intelligent choice of whether or not he wanted his insurance to continue. It does not seem that in interpreting this section the Veterans' Administration has contended or the courts will require that

2. The Administrator of Veterans' Affairs.

there must be a showing that the veteran was actually prevented from sending his waiver through to the proper authorities, or that the veteran would have elected to get his premium waived if he had had the opportunity. The latter seldom could be proved. The clause "circumstances beyond his control" seems to have the purpose of preventing plain injustices—to give relief where one as a rule may assume that the veteran was hampered in making a choice or prevented from doing so.

Had the veteran fully known of his condition and its almost certain ending within a short time, and he being competent mentally, as Kershner was, then this court should hold against him.

While a decision for the veteran does put the government in a difficult situation, which it seeks to avoid in that it will have to defend cases resting on a decedent's state of mind,[3] yet this court accepts the decision of the Court of Appeals for the District of Columbia in the Landsman case, supra, certiorari having been denied by the Supreme Court. Another case reaching the same result is United States v. Myers, 8 Cir., 213 F.2d 223.

If, absent a showing that a serviceman positively did not want insurance, it will be presumed that he did want it (and this seems to be one of the practical effects of Section 802(n)), it seems quite as reasonable to hold that this veteran Kershner had circumstances beyond his control and was therefore entitled to have his beneficiary, his mother, apply for the premium waiver, thereby insuring collection of the policy by her.

The element present here, lack of knowledge of true condition, induced by the affirmative humane acts of Veterans' Administration doctors, we think is quite as much a circumstance beyond the decedent's control as if he had been insane.

This court is fully aware that it has not applied a standard of construction of language such as one would use in testing a contract made between the government and the Standard Oil Company of California. Further, the court does not intend to decide the case which will be not long in forthcoming, where existence of the fact of fatal illness is withheld from the veteran by his private physician. At the same time, the authority of Federal Crop Insurance Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10, is not questioned.

The judgment of the district court is reversed. That court should now proceed in a manner not inconsistent with this opinion.

---

3. That is, knowledge; not sanity.