Thomas E. SLY
v.
UNITED STATES of America.
No. 11298.

United States Court of Appeals,
Seventh Circuit.
March 17, 1955.

George D. Chopin, St. Louis, Mo., Mc-Roberts & Hoban, East St. Louis, Ill., Chopin & Boisaubin, St. Louis, Mo., for appellant Vincent L. Boisaubin, St. Louis, Mo., of counsel.

C. M. Raemer, U. S. Atty., East St. Louis, Ill., John Morton Jones, Asst. U. S. Atty., Danville, Ill., for appellee.

Before MAJOR, FINNEGAN and LINDLEY, Circuit Judges.

MAJOR, Circuit Judge.

This action was brought against United States of America by plaintiff, Thomas E. Sly, as the designated beneficiary in a contract of National Service Life Insurance in the principal amount of $10,000, issued to Thomas Joseph Sly, son of the plaintiff. On motion of the defendant, the trial court directed a verdict in its favor and entered its judgment accordingly. From this judgment plaintiff appeals.

Both the insured and beneficiary were citizens and residents of Illinois. The contract became effective May 12, 1943, while the insured was in the military service. Premiums were paid until October 12, 1948, when the insurance lapsed for non-payment of premiums. The insured was examined by an East St. Louis physician in February, 1949, and his ailment was diagnosed as leukemia, which is an incurable and fatal disease. The nature of the insured's ailment was purposely concealed from the insured by the physician and by his father and mother. The insured died on May 24, 1950, at the age of 27, as the result of leukemia. Defendant in its amended answer conceded that the insured "on May 12, 1948 [at which time the contract was in force and effect], become totally and permanently disabled and remained in such state until the day of his death."

Title 38 U.S.C.A. § 802(n) relative to waiver of premium provides in pertinent part as follows:

"Upon application by the insured \* \* \* payment of premiums on such insurance may be waived during the continuous total disability of the insured, which continues or has continued for six or more consecutive months, if such disability commenced \* \* \* while the insurance was in force under premium-paying conditions \* \* \*."

Thus there is no question under the facts stated but that the insured was entitled to a waiver of the payment of premiums upon application. In other words, if application had been made the policy would have been in force and effect at the time of his death. The insured, however, failed to make such application.

The provision of the quoted statute further provides for waiver of premiums "in any case in which the Administrator finds that the insured's failure to make timely application for waiver of premiums \* \* \* was due to circumstances beyond his control," and further, "that in the event of death of the insured without filing application for waiver, the beneficiary, within one year after the death of the insured \* \* \* may file application for waiver with evidence of the insured's right to waiver under this section."

Within a year after the insured's death, plaintiff (the insured's father and designated beneficiary) filed an application with the Veterans Administration, supported by proof of the insured's right to a waiver of payment of premiums. This application was denied and, as a result, the present action was commenced.

The sole issue raised by the pleadings was whether the insured's failure to make application for waiver of premium payments "was due to circumstances beyond his control"; in fact, the record fails to disclose that any other issue was raised at the trial. Defendant's motion for a directed verdict rested upon the premise "that the plaintiff has not proved a cause of action against defendant," and apparently it was upon this basis that the court allowed the motion.

Subsequently, plaintiff moved the court to set aside the judgment entered for defendant, and for the entry of a judgment for plaintiff or, in the alternative, for a new trial. The court in denying plaintiff's motion filed an opinion which sets forth accurately the issues before the court at the commencement of the trial but stated, "During the course of the trial, however, another issue arose out of the facts shown by the testimony of plaintiff and his witnesses which cannot be overlooked." The issue thus referred to is that plaintiff was estopped to maintain the action because of his refusal or failure to inform the insured (his son) of his condition as disclosed by the diagnosis made by the physician, and it was upon this ground that plaintiff's motion for vacation of the judgment or, in the alternative, for a new trial, was denied.

As a basis for its application of the doctrine of estoppel, the court stated the facts developed at the trial as follows:

"In the presentation of the plaintiff's case Dr. Francis Bihss, a radiologist and the treating physician of the deceased, testified that before October 12, 1948 he had diagnosed the deceased's condition as spleenic leukemia; that he advised the plaintiff of insured's condition, that the disease was incurable and that he was totally and permanently disabled; that he agreed with plaintiff beneficiary to keep such information from the insured; that in his opinion it was better from a medical standpoint for the insured to be kept in ignorance of his true condition. The plaintiff, Thomas E. Sly, was also sworn as a witness, and testified that he was the father of the deceased, Thomas Joseph Sly; that he knew that he was named as a beneficiary in the policy; that he was engaged in business as an insurance broker and that the deceased worked with him a portion of the time; that

during the period of one year, following October 12, 1948, he knew that his son was suffering from an incurable disease known as spleenic leukemia and was totally and permanently disabled; that during this time he and Dr. Francis Bihss agreed, for the good of the insured, as he believed, to keep this information from the insured and that he did keep such information from him."

The court reasoned, "The lack of knowledge, which is here alleged to be a circumstance beyond the control of the deceased such as would excuse his failure to file an application for a waiver of premium, was admittedly a result of the conscious and deliberate efforts of the plaintiff who was named as beneficiary in the policy," and that the beneficiary should not "be permitted to take advantage of his own deliberate acts and omissions which prevented the insured from complying with the requirements of the policy." The court cited and quoted from R. H. Stearns Co. v. United States, 291 U.S. 54, 54 S.Ct. 325, 78 L. Ed. 647, as authority for its conclusion that the doctrine of estoppel was controlling. For reasons subsequently disclosed, we are of the view that the court's reliance upon the Stearns case was ill advised.

Plaintiff argues that the doctrine of estoppel presents an issue of substantive law to be determined by Illinois rather than federal decisions. The government makes no response to this argument but instead relies, as did the court below, upon the decision in the Stearns case. In our view, we need not be too much concerned as to whether the federal or state rule is applicable because any difference is not sufficient to alter the result which we think must be reached. In Lowenberg v. Booth, 330 Ill. 548, 555, 162 N.E. 191, 195, the court set forth six elements which must appear as a basis for equitable estoppel, as follows:

"(1) Words or conduct by the party against whom the estoppel is alleged, amounting to a misrepresentation or concealment of material facts; (2) the party against whom the estoppel is alleged must have knowledge either actual or implied, at the time the representations were made, that they were untrue; (3) the truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made, and at the time they were acted on by him; (4) the party estopped must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel, or by the public generally; (5) the representations or conduct must have been relied and acted on by the party claiming the benefit of the estoppel; and (6) the party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party is permitted to deny the truth thereof."

Again, in Dill v. Widman, 413 Ill. 448, 455, 109 N.E.2d 765, 769, the Illinois court in considering the issue of equitable estoppel stated:

"The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts."

Turning to the federal cases, we find there is no appreciable difference in the rule. This court, in Lebold v. Inland Steel Co., 7 Cir., 125 F.2d 369, 375, stated:

"Estoppel arises only when one has so acted as to mislead another and the one thus misled has relied upon the action of the inducing party

to his prejudice. Shortly stated, one may not assume a position inconsistent with a former position to the prejudice of his adversary. Texas Co. v. Gulf Refining Co., 5 Cir., 26 F.2d 394; Pomeroy Equity Jurisprudence, Sec. 804. It is the injury accruing from inducement or silent acquiescence which creates the estoppel. [Citing cases and Pomeroy Eqity Jurisprudence.]"

Again, this court in Texas Co. v. Chicago & A. R. Co., 7 Cir., 126 F.2d 83, 90, stated:

"A necessary element in equitable estoppel is that the person claiming it must have been misled into such action and that he will suffer injury if the estoppel is not declared. [Citing cases.] That is to say, the person setting up the estoppel must have been induced to alter his position [citing cases] in such a way that he will be injured if the other person is not held to the representation or attitude on which the estoppel is predicated. * * * In other words, an estoppel should be limited to what may be necessary to put the parties in the same relative position which they would have occupied if the predicate of the estoppel had never existed."

The elements necessary to constitute estoppel have been similarly stated in numerous federal cases. See Uhlmann Grain Co. v. Fidelity & Deposit Co. of Maryland, 7 Cir., 116 F.2d 105, 109; Buss v. Prudential Ins. Co. of America, 8 Cir., 126 F.2d 960, 966; Cook v. Ball, 7 Cir., 144 F.2d 423, 437; Grand Trunk Western R. Co. v. H. W. Nelson Co., Inc., 6 Cir., 116 F.2d 823, 836. In the latter case, the court stated:

"In order to apply an estoppel by silence it is indispensable that the party standing by and concealing his rights should be fully apprised of them and should by his conduct show such gross negligence as to encourage or influence the opposite party, who is wholly ignorant of his adversaries' claim, to act to his disadvantage."

As shown, the estoppel here relied upon is predicated upon the silence of the plaintiff-beneficiary, that is, upon his neglect or refusal to inform the insured of the nature of his ailment, as disclosed by the physician's diagnosis. Whether a father is under any obligation, legally, morally or otherwise, to inform a son of his impending death, we leave for others to decide because we think it is irrelevant here. The important point is that plaintiff was under no obligation to notify or inform the defendant as to the physical condition of the insured and it would have been an idle gesture for him to have done so. Plaintiff made no representation to the defendant by silence or otherwise and consequently it could not have been induced to alter its position. The government weakly suggests that in the absence of estoppel it might be made to suffer by being required to pay the insurance. The suggestion means nothing more than that the government would thereby escape an obligation which it might otherwise be required to discharge. So far as we can discern, the government is in the same position, certainly no worse, than it would have been had the predicate of the estoppel not existed. In that event, the insured presumably would have made application to and obtained from the defendant a waiver of the payment of premiums and the policy would have remained in force and effect until his death. More pointedly, the government is in the awkward position of attempting to escape liability because of the failure of the beneficiary to do something which, if he had done, would in all probability have made its potential liability definite and certain. The government in its brief makes a statement which, in our view, borders on the absurd. It states: "The evidence shows that the plaintiff, with knowledge that the insured was disabled kept the knowledge from the insured so that he (the insured) could not comply with the requirement that he apply for a premium waiver * * *." There is

no proof that the plaintiff was motivated by such a purpose and it taxes all credulity to think that he was. The provision regarding the right of the insured to apply for a waiver of premium was not contained in the contract of insurance but only in the federal statute. Even if we indulge in the violent presumption that either the plaintiff or the insured had knowledge of the provision, still it is unreasonable to think that the plaintiff in keeping knowledge from his son had anything in mind other than the latter's welfare. If he had been thinking about insurance and had known of the provisions of the statute regarding premium waiver, it seems more reasonable to think that he as beneficiary would have informed his son as to his condition so that he might make application for waiver of premium payments.

We think it obvious under the rule of both the state and federal cases that the doctrine of estoppel on the facts of this case is not available to the government, that the essential elements which must exist as a prerequisite to its application are absent. Moreover, we think this conclusion is not inconsistent with the Stearns case, 291 U.S. 54, 54 S.Ct. 325, so heavily relied upon by the trial court and the government. True, there are statements in that opinion which, if accepted literally, out of context and in disregard of the factual situation before the court, appear to support the estoppel theory. But such statements must be considered in the light of the facts before the court as well as the question for decision. There, the suit was by a taxpayer against the government and the court held that the former was estopped to maintain the action because of his acts and conduct toward the government in the matter in dispute. The government in reliance upon such acts and conduct was induced to change its position, to its detriment. It would appear under all authorities that estoppel was properly applied. And we think the court announced no new or different principle relative to estoppel or the elements which must exist to give it vitality. The government professes to find support in the statement, in 291 U.S. at page 62, 54 S.Ct. at page 328, "A suit may not be built on an omission induced by him who sues." Evidently this statement refers to an omission by a defendant induced by the one who sues. At any rate in that case the government's omission to take action which it otherwise would have taken was induced by the plaintiff. Furthermore, the court cites in support of the quoted statement Swain v. Seamens, 9 Wall. 254, 274, 19 L.Ed. 554, and United States v. Peck, 102 U.S. 64, 26 L.Ed. 46, both of which announce the general rule as to the doctrine of estoppel. In the Swain case the rule is stated as follows:

"Where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or acts of encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adversary claim."

In the Peck case it is stated in a headnote:

"The conduct of one party to a contract which prevents the other from performing his part, is an excuse for non-performance."

The trial court in the instant case stated:

"But for that question [referring to estoppel], under the present state of the authorities, the case would have been permitted to go to the jury, under instructions, despite the earnest contention of the government that lack of knowledge of insured that he was totally and permanently disabled did not constitute a circumstance beyond his control so as to excuse failure to apply for waiver of premiums."

The "authorities" which the court referred to undoubtedly included Landsman v. United States, 92 U.S.App.D.C. 276, 205 F.2d 18, and United States v. Myers, 8 Cir., 213 F.2d 223, both of which held in effect that lack of knowledge of the existence of disease or of its seriousness

and effect, and lack of knowledge of total disability arising in the life of the policy may, as a matter of fact, be found to be due to "circumstances beyond the control" of the insured, and hence excuse the failure to make timely application for waiver. Under such circumstances, it was held that the beneficiary may apply for the waiver within one year after insured's death. We need not analyze or discuss these cases because the government concedes for the purpose of this appeal that the law as announced is settled and controlling to the extent that the facts are similar. In the instant case there was some evidence that the insured had knowledge of and realized his condition. How or in what manner he acquired such information, if he did, is not disclosed by the record. We decide nothing more, however, than that the doctrine of estoppel was erroneously applied. Whether the evidence on another trial presents a factual issue, submissible to a jury, we leave to the trial court to decide.

The judgment appealed from is reversed and the cause remanded for a new trial.