Ruth W. MARTIN, Plaintiff-Appellee,

v.

UNITED STATES of America,
Defendant-Appellant.

No. 11561.

United States Court of Appeals
Seventh Circuit.

Nov. 14, 1956.

Robert Tieken, U. S. Atty., Chicago,
Ill., John G. Laughlin, U. S. Dept. of Justice, Washington, D. C., for appellant.

L. H. Vogel, Robert B. Johnstone, Chicago, Ill., for appellee.

Before MAJOR, FINNEGAN and SCHNACKENBERG, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from a judgment of the district court in favor of plaintiff, in an action to recover the proceeds of a National Service Life Insurance policy issued on the life of Lowell Franklin Martin (hereinafter called the veteran). Plaintiff at the time of the institution of the action was the widow of the veteran and the designated beneficiary under the policy.

The veteran was issued a National Service Life Insurance policy on October 1, 1943, in the sum of $10,000, shortly after his induction into the military service. He paid all premiums due on this policy from that date up to and including the payment due on September 1, 1948. The premium due on October 1, 1948 was not paid, nor was it paid within the 31-day grace period, and the policy lapsed as of October 1, 1948, subject, however, to reinstatement under the prescribed regulations. On November 11, 1948, the veteran by two checks, dated November 8, 1948 and November 10, 1948, tendered the premiums due on October 1 and November 1, 1948, both of which were cashed by the Veterans Administration on November 16, 1948. On November 18, 1948, the Veterans Administration mailed to the veteran a notice of the lapse of his policy due to non-payment of premium and also a blank application for its reinstatement. The veteran returned the application on November 30, 1948, which was received by the Administration on the following day. The application stated that the veteran was in as good health then as he was on the due date of the premium in default. It further stated that an attending physician's statement in support thereof would follow. On December 10, 1948, the veteran mailed a statement by Dr. Richard B. Capps, dated November 30, 1948, in which it was stated that the diagnosis of the veteran's case was carcinoma of the transverse colon which had been surgically removed and as far as they were able to determine there were no metasteses, and "while the prognosis must naturally be guarded for the present, they felt, on the whole, the veteran had a very good chance for complete recovery."

On the basis of this statement, the Veterans Administration sent to Dr. Capps on January 8, 1949 a request to make a more extensive report on their form. This report when made by Dr. Capps disclosed that an X-ray had been taken of the veteran on October 4, 1948, showing the involvement of a tumor, to correct which an operation was performed on October 10, 1948. The report further indicated that when the veteran was seen by Dr. Capps on December 10, 1948, no evidence of recurrence of the cancerous condition was found. Thereafter, on April 27, 1949, the Veterans Administration, by a letter over the signature of Dr. Chas. H. Connor, Chief Insurance Medical Section, notified the veteran that his application for reinstatement was not acceptable because of a "bowel disorder diagnosed after date of lapse" and further " * * * because of the above-mentioned condition you were not considered to have been in as good health on the date you applied for reinstatement as you were when your insurance lapsed. * * * However, you may apply for reinstatement after three years provided there has been no recurrence of this disorder." The premiums previously tendered by the veteran were refunded and the veteran took no further action. He died on December 31, 1950, leaving surviving his widow, Ruth W. Martin, who, as stated above, is the principal beneficiary under the policy; his mother, Celia Gasaway Martin, who was a contingent beneficiary, and a son, Lowell Franklin Martin, Junior, who was four years of age at the time of his father's death.

The record shows that the veteran first visited Dr. Capps as a patient on September 27, 1948, and that upon the basis of physical examinations on that date and the history of the veteran's past complaints which extended over a considerable period, Dr. Capps concluded that the veteran was and had been suffering from

carcinoma of the colon; that on September 30, 1948, Dr. Capps ordered the veteran to St. Luke's Hospital where, on October 11, 1948, he was operated on by Dr. Foster L. McMillan. The operation showed that the diagnosis of Dr. Capps was correct. It further appeared from the operation that the carcinoma was of a slow growing type and was unusually large. The veteran was released from the hospital on October 24, 1948, and Dr. Capps was then of the opinion that he had a very good chance of complete recovery. Dr. Capps examined the veteran on November 8, 1948, on December 10, 1948, on January 18, 1949, and on April 18, 1949. On the latter date he had gained 26 pounds and was back to his best weight of 176 pounds. However, as a result of further examinations beginning in June 1949, the veteran was ordered back to the hospital on November 23, 1949, when he was again operated on. After this second operation his condition was somewhat better but he never again got back to his normal state of health and gradually his condition deteriorated until he was hospitalized again in October 1950 for a transfusion, which was repeated on November 28, 1950. He remained in the hospital until his death.

The affidavits of Dr. Capps and Dr. McMillan submitted to the Veterans Administration state that they were each of the opinion that the veteran was in as good or better health on November 30, 1948 as he was on September 1, 1948. The record discloses that L. C. Cocheau, Director of the Insurance Service for the Chicago District, wrote to C. A. Zoller, Jr., the Director of Underwriting Service at Washington, D. C., in which he stated in respect to the affidavits submitted by Dr. Capps and Dr. McMillan as follows, "Had this office been in possession of this information at the time of considering the application for reinstatement we would have been forced to conclude that the applicant met comparative health requirements." The record further discloses that Dr. Capps never told the veteran that his days were numbered. Other witnesses confirmed the outward favorable physical facts pertaining to the veteran. Plaintiff testified that the veteran did not believe he was going to die right up to the end. The record also discloses that the Veterans Administration, after receipt of Dr. Capps' original statement, did not inform the veteran of his right to apply for waiver of premium due to total disability. Dr. Connor's notification that the veteran's application for reinstatement was rejected because the veteran was not in as good health at the time of the application for reinstatement as he was at the time of the lapse of insurance made no reference to his right to apply for waiver of premium due to total disability. After his death a claim was filed by plaintiff, which was considered not only as a claim for benefits but also as a claim for waiver of premium due to total disability. This claim was rejected by the Veterans Administration, whereupon this action was instituted seeking recovery on the policy.

The district court found that the veteran was totally disabled for insurance purposes from September 30, 1948 until his death and he would have been entitled to a waiver of the payment of premiums had he made timely application, as provided by Sec. 802(n), Title 38 U.S.C.A.; that the veteran relied on the representations of the officials of the Veterans Administration as to his rights and that during the time of his disability he was not aware of the existence and seriousness of his illness and the incurable nature thereof was withheld from him by his physician and plaintiff. The district court concluded that the veteran's failure to make timely application for waiver of premium was due to (a) his ignorance of the existence and seriousness of his disease, and (b) the fact that his rights were misrepresented to him by the Veterans Administration's communication of April 27, 1949.

On appeal, the government contends that the finding of the district court that the insured was not aware of the existence or seriousness of his illness was clearly erroneous and, further, that such ignorance is not a circumstance be-

yond control of the veteran affecting his ability to make application for a waiver of premiums and does not excuse his failure to do so. There can be no question but that the veteran was continuously totally disabled under the provisions of Title 38 U.S.C.A. § 802(n), and so the only question for this court to decide is whether upon the facts as above outlined the district court was clearly in error in making its findings now challenged by the government.

■■ It is well to keep in mind that the purpose of the statute governing the situation herein was humanitarian and that a liberal interpretation thereof should be accorded in aid of the veteran. United States v. Zazove, 334 U.S. 602, 610, 68 S.Ct. 1284, 92 L.Ed. 1601. The government would have us interpret the phrase "circumstances beyond his control," contained in Sec. 802(n), as meaning that the veteran was prevented physically from performing the acts necessary to making application for a waiver, such prevention being by reason of some physical or mental circumstances beyond his control, and that ignorance in no way affected such circumstances. We think such an interpretation must be rejected.

That which is encompassed in the phrase "circumstances beyond his control" has been considered by a number of courts under a variety of facts and has usually been given an interpretation favorable to the veteran or his beneficiary. See Landsman v. United States, 92 U.S. App.D.C. 276, 205 F.2d 18; United States v. Myers, 8 Cir., 213 F.2d 223; Kershner v. United States, 9 Cir., 215 F.2d 737, and United States v. Vandver, 6 Cir., 232 F.2d 398. In the Landsman case the court stated, 205 F.2d at page 22:

"Giving the phrase 'circumstances beyond * * * control' its fair meaning, free of artificial restriction, we think that ignorance of the existence or seriousness of an injury or disease may in a proper case constitute such a circumstance—if the ignorance is in fact beyond control."

In the Kershner case the court stated, 215 F.2d at page 739:

"It is not incumbent on this court to furnish now a full list of what may be eventually held to be 'circumstances beyond the control' of the veteran. The words probably would excuse the shipwrecked sailor stranded on an island, which is the classic example. It probably would excuse one imprisoned in a distant unfriendly land, and no doubt protect the man totally insane.

"The underlying thought of Congress must have been, when it used 'circumstances beyond his control,' to cover cases where the veteran was deprived of a chance, disability existing, to make a free or intelligent choice of whether or not he wanted his insurance to continue. It does not seem that in interpreting this section the Veterans' Administration has contended or the courts will require that there must be a showing that the veteran was actually prevented from sending his waiver through to the proper authorities, or that the veteran would have elected to get his premium waived if he had had the opportunity. The latter seldom could be proved. The clause 'circumstances beyond his control' seems to have the purpose of preventing plain injustices—to give relief where one as a rule may assume that the veteran was hampered in making a choice or prevented from doing so."

In the Vandver case the court held that the failure to make application for waiver of premium might be due to circumstances beyond the control of the veteran for three reasons: (1) ignorance of the existence of the disease, (2) ignorance of the seriousness and effect of the disease, and (3) lack of knowledge of his own total disability arising during the life of the policy.

■ It may be true, as defendant urges, that there is no basis for a find-

ing that the veteran was ignorant of the existence of the disease with which he was afflicted. At the same time, however, the evidentiary facts, as heretofore stated, furnish a solid basis for the finding that he was ignorant of the seriousness and effect of the disease or that he had knowledge of a total disability existing during the life of the policy. The doctors no doubt thought that the first operation was a success and that there was a strong probability that the veteran would be restored to health. At any rate, the doctors gave the veteran assurance that such was the fact, and there is testimony to the effect that the veteran, encouraged by the doctors and his wife, persisted in such view to the end. In any event, we cannot say that the finding to the effect that the veteran was not aware of the seriousness of his illness and its incurable nature is clearly erroneous.

■ More than that, it may reasonably be inferred that the veteran's failure to apply for waiver of premium on account of total disability was due to the treatment accorded him by the Veterans Administration. While the government is not estopped to defend on the ground that there was a failure to apply for a waiver of premium, it does so, in our opinion, with poor grace. At the time the veteran made application for reinstatement of his policy, the Veterans Administration had the same information as the veteran as to the dangerous nature of his ailment. This is so because the veteran submitted to the Veterans Administration a report by his doctor which contained the same information which was available to him. In place of advising him as to his right to apply for a waiver of premium, he was told that he might "apply for reinstatement after three years." It would seem that fairness and a proper regard for the rights of the veteran would have prompted the Veterans Administration to advise the veteran that while his condition was such that he was not entitled to reinstatement of his policy, he was entitled to apply for waiver of premium, which the law would allow in case of a showing of total disability. We are not disposed under these circumstances to disturb the finding that the rights of the veteran were misrepresented to him by the Veterans Administration.

No question is raised but that the findings support the judgment. We accept the findings because we cannot say they are clearly erroneous, and the judgment is

Affirmed.