Elizabeth Mays WHITE, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. No. 317.

United States District Court
W. D. Virginia, Lynchburg Division.

Sept. 8, 1954.

870

Phillip H. Hickson and Arthur B. Davies, III, Lynchburg, Va., for plaintiff.

John Strickler, U. S. Atty., Roanoke, Va., and Thomas J. Wilson, Asst. U. S. Atty., Harrisonburg, Va., for the United States.

BARKSDALE, District Judge.

This action having been tried upon the facts by the Court without a jury, the Court doth hereby find the facts specially and state separately its conclusions of law thereon, and directs the entry of the appropriate judgment, as follows, in conformity with Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

#### Findings of Fact.

Plaintiff, Elizabeth Mays White, is a resident of Lynchburg, within the Western District of Virginia. This action has been instituted under the National Service Life Insurance Act of 1940, 38 U.S.C.A. § 801 et seq., and the World War Veterans' Act of 1924, as amended, 38 U.S.C.A. § 445. Plaintiff is the surviving sister of a deceased soldier, Eugene Edward Mays, who was inducted into the United States Army November 14, 1942, entered into active service November 28, 1942, and was discharged therefrom May 18, 1945. While on active duty as a soldier in the United States Army, Eugene Edward Mays applied for and had issued to him two National Service Life Insurance policies in the amount of $5,000 each, the first one having been issued on December 1, 1942, evidenced by Certificate No. N–7 469·245, and the second one having been issued to him on February 1, 1943, being evidenced by Certificate No. N–8 767 057. Eugene Edward Mays designated plaintiff as beneficiary under both of said insurance contracts and no change of beneficiary was made by him thereafter. At the time of his discharge, all premiums payable on both of said insurance contracts had been fully paid, up to June 30, 1945.

When the deceased soldier, Edward Eugene Mays, was discharged from the Army on May 18, 1945, for disability after combat service overseas, he was suffering from chronic nephritis, hemorrhoids, was highly nervous and depressed, had an inadequate personality, and was in a constitutional psychopathic state. He had lost weight, was easily upset, was subject to frequent spells of weeping, was frequently sullen and morose, and had no control of the functioning of his bladder, kidneys and bowels. The nephritis caused painful swelling of his legs and feet, and cramping of his hands. He suffered from headaches, and slept badly. A doctor, who saw him shortly after his discharge, described him as "emotionally unstable" and "a nervous wreck".

The veteran's condition never improved: on the contrary, he grew progressively worse until his death.

I find as a fact that said Eugene Edward Mays was totally and permanently disabled from the time of his discharge until his death. This disability commenced subsequent to the issuance of his insurance and while the same was in force, and prior to his sixtieth birthday.

Eugene Edward Mays did not make application during his lifetime for waiver of premiums due on his contracts of insurance, nor did he submit any evidence of the existence of his total disability. However, I find as a fact that his failure to apply for waiver of premiums and submit supporting evidence was because of circumstances beyond his control. I do not find that the veteran was *non compos mentis*, but I do find as a fact that the veteran's severe, painful and embarrassing physical· ailments so accentuated his constitutional psychopathic state as to render him sufficiently mentally incompetent to make his fail-

ure to apply for waiver of premiums due to circumstances beyond his control.

Prior to his induction into military service, plaintiff had worked as a painter and carpenter for railroads and contractors. After his discharge, the veteran occasionally tried to work at his trade, but by reason of his physical and mental condition, he was incapable of sustained labor, primarily because of the painful swelling of his feet and legs and the cramping of his hands. He was never able to do even one sustained day's work.

It appears that, shortly before his discharge, the veteran joined with other members of his family in conveying certain property left by his deceased father, to a brother. However, it does not appear that the veteran showed any initiative in this transaction, but merely signed and acknowledged the deed with the other members of his family. He bought an antiquated Ford automobile for $35 and procured and kept renewed a driving license, although he drove very little. His signature appears on letters in regard to his disability compensation written to the Veterans' Bureau from the McGuire General Hospital in 1950, but from the fact that these letters are typewritten, and from the language used in the letters, it is apparent that the letters were not written or dictated by the veteran. He had a life interest in a house, on which he occasionally did a little painting and repairing.

On the other hand, as showing his mental incapacity, it appears that the veteran's sister had a savings account as agent for the veteran in which she deposited such sums of money as he sent her during his military service. After his discharge, his sister insisted that the account be transferred to his name, but the veteran declined, left his savings account in his sister's name, and always had her withdraw such sums of money as he might want. Although the house in which the veteran had a life interest was very close to where the veteran lived, he had his brother attend to the renting of the house for him, collect the rents, pay the taxes, and attend to all other necessary details. Although the veteran was entitled to a pension from the Railroad Retirement Board, and had documents in his possession to show it, he made no claim for a pension for years, and only finally did so at the insistence of a friend.

Eugene Edward Mays died on February 8, 1952. Plaintiff, within one year after the death of the insured, filed with the Veterans' Administration on May 14, 1952, an application for waiver of premium, with evidence tending to show the right of the insured to waiver under 38 U.S.C.A. § 802(n). Prior to the commencement of this action, on May 14, 1952, plaintiff made and filed with the Veterans' Administration a claim for payment of benefits under said contracts of life insurance, but such a claim was disallowed by the Veterans' Administration on June 23, 1952. From such ruling disallowing her claim, plaintiff appealed on February 6, 1953. Final administrative denial of plaintiff's claim was made on August 24, 1953. A disagreement exists between the plaintiff and the Veterans' Administration as to payment of such insurance according to the terms of the said contracts of life insurance. Six years have not elapsed since the accrual of the right which plaintiff asserts in this action.

Plaintiff has been obliged to employ Phillip H. Hickson, Esquire, and Arthur B. Davies, Esquire, attorneys at law, to institute and prosecute this action, and such attorneys are entitled to a reasonable fee for their services. I find as a fact that a reasonable fee to be paid to said attorneys is an amount equal to ten percentum of the amount recovered.

### Conclusions of Law.

Upon the facts found, I conclude that this court has jurisdiction of this action and the parties thereto.

I conclude that the plaintiff is entitled to recover of the defendant the full benefits due and payable under the contracts of life insurance sued upon, and all fu-

ture benefits and payments thereunder, together with such interest as may be provided by law.

■ I conclude that Phillip H. Hickson, Esquire, and Arthur B. Davies, Esquire, attorneys at law, are entitled to a fee of ten percentum of all amounts recovered, for their services to the plaintiff as her attorneys in the preparation and prosecution of this action.

### Discussion.

■ I do not believe that there can be any question about the fact that the veteran was totally and permanently disabled at the time of his discharge, which disability continued until his death. It seems to me that the only question in the case is the question of whether or not the veteran's failure to apply for a waiver of premiums was due to "circumstances beyond his control". 38 U.S.C.A. § 802(n). It does not seem that this language has been construed in many decisions. The Government relies primarily on Aylor v. United States, 5 Cir., 194 F.2d 968, 970. In that case, the veteran also suffered from chronic nephritis, which to some extent effected the veteran's mental condition. However, the court said:

"We think that, in order for an insured person to claim a condition of health as 'circumstances beyond his control,' it must be shown that he was mentally incapable of making an application for waiver."

In United States v. Cooper, 6 Cir., 200 F.2d 954, 956, the court said:

" * * * all the assembled facts relied upon point solely to physical disability. Such disability in and of itself is not sufficient to establish waiver of premiums * * *."

From the language of the Aylor case, it might be contended that no recovery could be had unless the veteran was *non compos mentis*. However, it seems to me that such a construction would result in much harsher treatment than Congress meant to accord to veterans.

In the case of Landsman v. United States, 92 U.S.App.D.C. 276, 205 F.2d 18, 21, the Government urged " * * * that 'circumstances' are beyond the insured's control, within the meaning of the statutory language, only when the insured is mentally incompetent", and relied primarily on the legislative history of the Act. In this connection, the court considered the opinion in the Aylor case, supra, but in rejecting the Government's contention, the court said:

"We conclude, therefore, that the narrow interpretation urged by the Government must be rejected. Congress did not speak simply of cases where the insured was mentally incompetent. It spoke of 'any case' in which the insured's failure to make timely application for waiver of premiums 'was due to circumstances beyond his control.' The meaning of those words must not be unnaturally restricted."

It is true that the facts in the Landsman case were not similar to the instant case.

The case principally relied upon by plaintiff, and in which the facts are quite analogous, is Jensen v. United States, D.C., 94 F.Supp. 468. There was no finding of mental incompetence. The facts found show, as I think the facts in the instant case show, that the veteran was in very poor physical and mental condition. A jury's verdict for the plaintiff was affirmed by the court.

It is quite conceivable to me that there might be many instances of complete physical disability, where the circumstances of the disability would not justify a finding that the failure to apply for a waiver was due to circumstances beyond the veteran's control. However, I do not feel any doubt that the facts here, showing that the veteran at all times pertinent suffered from serious, painful and embarrassing physical disabilities, in conjunction with a constitutional psychopathic state, thoroughly justify the conclusion that his mentality was

so adversely affected as to constitute "circumstances beyond his control", and I so hold.

The United States Attorney will submit an order in accordance with these findings and conclusions.