**Christine Rosser SWART, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 377.**

United States District Court W. D. Virginia, Lynchburg Division.

Feb. 12, 1958.

Philip H. Hickson and Arthur B. Davies, of Hickson & Davies, Lynchburg, Va., for plaintiff.

Thomas J. Wilson and H. Clyde Pearson, Asst. U. S. Attys., Roanoke, Va., for defendant.

BARKSDALE, District Judge.

This action having been tried upon the facts by the court without a jury, the court doth hereby find the facts specially and state separately its conclusions of law thereon, and directs the entry of the appropriate judgment as follows:

### Findings of Fact.

Plaintiff, Christine Rosser Swart, is a resident of Rustburg in the Western

District of Virginia. She has instituted this action under the National Service Life Insurance Act of 1940, 38 U.S.C.A. § 801 et seq., and the World War Veterans' Act of 1924 as amended, 38 U.S.C.A. § 445. While on active duty as an enlisted man in the United States Navy, plaintiff's son, James Carrington Swart, applied for, and there was issued to him on November 11, 1944, a contract of National Service Life Insurance in the amount of $10,000. Plaintiff's son designated his mother, plaintiff herein, and his father, beneficiaries, "Share and share alike or to the survivor". Plaintiff's husband died in 1953 before the institution of this action, so plaintiff is the sole beneficiary. James Carrington Swart was enlisted as a Flight Cadet in the United States Navy on May 15, 1943, and served therein until his honorable discharge on May 10, 1946. The premiums due under his contract of insurance were deducted from his pay until he was discharged, at which time his premiums were paid until July 10, 1946. While still on active duty, plaintiff was hospitalized in a Navy Hospital in California, and tuberculosis being suspected, he was X-rayed there on February 25, 1946, March 19, 1946, and April 8, 1946. When these films were reviewed by a board of medical officers at the Veterans' Administration Hospital, Oteen, N. C., on October 23, 1947, they reported that the veteran Swart had an active (tubercular) lesion in April 1946. Nevertheless, the doctors at the Navy Hospital in California, on the basis of these X-rays, concluded that Swart had no active tuberculosis, and very shortly thereafter, May 10, 1946, he was discharged, not for tuberculosis, nor suspected tuberculosis, but strangely enough, for the stated reason that his height was excessive, although no objection had been made to his height during the three years he had served creditably. Upon his discharge, he returned to the home of his family at Rustburg, Virginia, and having been given to understand by the Navy doctors that he had no tuberculosis, upon his application, he was admitted to the University of North Carolina as a veteran.

However, after a short while, his condition began to deteriorate, and he lost weight very rapidly, losing some forty pounds in the course of three months. He did not finish the semester, but returned home. His condition growing worse, he went to Johns Hopkins Hospital, where, on February 10, 1947, it was discovered that he had active tuberculosis in an advanced state. Shortly after his return to his home, he was admitted to the VA Hospital, Oteen, N. C., on April 6, 1947, where it was confirmed that he was suffering from advanced active tuberculosis affecting both lungs, and toxemia resulting from the tuberculosis, evidenced by daily fever and rapid pulse even while resting. On December 20, 1947, Swart left Oteen without leave. While at Oteen, on October 31, 1947, Swart was rated as one hundred percent disabled from May 11, 1946 (the day following his discharge) by reason of "Tuberculosis, Pulmonary, Chronic, Far Advanced, Active". While at Oteen, Swart was subjected to three operations, and in July, 1947, his parents were called to Oteen because of his serious illness. However, he left Oteen without leave on December 20, 1947, came home, said he was all right and going to McGuire VA at Richmond to recuperate. On January 10, 1948, to the great surprise of his parents, Swart was married, but after two days, on January 12, 1948, he was admitted to the McGuire VA Hospital at Richmond, where he remained for ten months, that is, until October, 1948, when he left McGuire without leave and came home saying that he was all right. After his return home, Swart undertook to work. For about two months he was employed by Richmond Newspapers, Inc., as an advertising salesman. While there, he was regarded as a promising boy, but carefree and irresponsible. He did not remain in this employment long enough to "adjust to the job", and then "just walked out". Then, later in the year 1949, strangely enough, he secured employment as a veterinary inspecting cows for the state, although he himself was suffering from advanced, active

tuberculosis. However, he was not strong enough for this work, so quit. Also, from time to time he tried to help his father on the farm, and was given a job collecting trash in the village of Rustburg. However, his work was unsatisfactory, and he lost his job. Meanwhile, in the fall of 1949, his wife developed tuberculosis and went for treatment to the Blueridge Sanatorium at Charlottesville. Although he paid her bills for a while, he finally deserted her and she secured a divorce for desertion in 1952. The veteran's father, a veteran of World War I, contracted tuberculosis after the veteran's return and died on August 16, 1953. When at home, the veteran never took proper care of himself, and although he drank very little when he first came home, as his condition became worse he began to drink to excess and for several years before his death on June 3, 1954, he drank excessively and on a number of occasions he would get on sprees and no one knew where he was. From time to time the veteran communicated with the Veterans' Administration, but nearly always he was assisted by his mother or an American Legion representative.

On March 4, 1953, plaintiff filed with the Veterans' Administration a claim for waiver of insurance premiums by reason of total disability. However, this claim was so barren of evidence and so poorly prepared that a Veterans' Administration examiner attached to it this memorandum:

"This is a very unusual case. We have no medical evidence at all, and no evidence or statement by the veteran as to whether his failure to timely file was due to circumstances beyond his control. His work record as set up on the 357 would seem to preclude a finding of t. d. (total disability) continuously from a date prior to the lapse even in a tuberculosis case. Certainly the work record, as well as the nature of the disability alleged, precludes the granting of an extension on the record as it now stands. I raise just one question. Should we disallow on this ground without first giving the veteran an opportunity to state his reasons for not filing earlier? I am tentatively recommending this action subject to your approval."

However, the application was refused and no appeal was taken. From the time of his discharge until his diagnosis at Johns Hopkins Hospital on February 10, 1947, the veteran did not know he had tuberculosis, nor that he was totally disabled. After his return from Johns' Hopkins and his admission to the VA Hospital at Oteen, he suffered from an advanced case of tuberculosis resulting in toxemia and fever which rendered him acutely ill. He was never actually *non compos mentis,* but from February 10, 1947 until his death, he was psychopathic, highly nervous, his mother described him as being a "nervous wreck", and in no mental condition to appreciate the importance of securing a waiver of payment of premiums on his insurance, nor to understand the legal requirements, rules and regulations for so doing. He was at all times, from the date of his discharge, May 10, 1946, until his death, totally disabled by reason of tuberculosis.

■ I find as a fact that the insured veteran's failure to make timely application for waiver of premiums, and his failure to submit satisfactory evidence of the existence and continuance of total disability, was due to circumstances beyond his control. The circumstance beyond his control which excused his failure to make application for waiver of premium from the date of his discharge, May 10, 1946, to February 10, 1947, was the fact that he did not know he was totally disabled from active tuberculosis, having been given to understand by the doctors in the Navy Hospital in California that he did not have tuberculosis, and the fact that he was discharged for excessive height rather than by reason of tuberculosis. The circumstances beyond his control which excused his failure to make timely application for waiver of premiums thereafter were his ad-

vanced tuberculosis which rendered him from time to time acutely ill and the resulting toxemia which rendered him psychopathic and irresponsible.

The total disability of the insured veteran commenced (1) subsequent to the date of his application for insurance; (2) while the insurance was in force under premium paying conditions, and (3) prior to the insured's sixtieth birthday. Within one year after the death of the insured veteran, the plaintiff-beneficiary filed with the Veterans' Administration on October 14, 1954, an application for waiver of premiums which was denied. Prior to the commencement of this action, on December 2, 1954, plaintiff made and filed with the Veterans' Administration a claim for payment of benefits due under the provisions of the insured veteran's contract of life insurance, but such claim was disallowed on December 17, 1954. An appeal was taken by plaintiff which was finally denied on April 21, 1955. A disagreement exists between the plaintiff and the Veterans' Administration as to her right to payment of the benefits provided for in her son's contract of insurance, according to its terms. Six years have not elapsed since the accrual of the right for which this action was instituted. Plaintiff has been obliged to employ attorneys to institute and prosecute this action, and such attorneys are entitled to a reasonable fee for their services and I find as a fact that ten percentum of the recovery is a reasonable amount to be paid to such attorneys for their services.

### Conclusions of Law.

Upon the facts found, I conclude that this court has jurisdiction of this action and the parties thereto.

I conclude that the plaintiff is entitled to recover of the defendant the full benefits due and payable under the contract of life insurance sued upon, and all future benefits and payments which may become due thereunder.

I conclude that Philip H. Hickson, Esquire, and Arthur B. Davies, Esquire, attorneys at law, are entitled to a fee of ten percentum of all amounts recovered by the plaintiff for their services to her as her attorneys in the preparation and prosecution of this action.

Government counsel will submit an appropriate order in accordance with these findings and conclusions.

### Discussion.

It is admitted that the insured's contract of insurance was in force under premium paying conditions until July 10, 1946, two months after his discharge on May 10, 1946. Although not admitted by the defendant, there can be no doubt that the insured veteran was totally disabled from May 11, 1946, until the date of his death. Such disability was determined by the Veterans' Administration on October 31, 1947, and at the trial, defendant's witness, Dr. Sandler, so testified. Under the law, the insured veteran had the right until August 1, 1947, to file an application for waiver of premiums on his life insurance contract. Had such timely application been made, and the facts been made known to the Veterans' Administration, his application should have been granted. It seems to me that the critical question in this case is whether or not the insured veteran's failure to file timely application for waiver of premiums was due to circumstances beyond his control. The fact that the insured veteran's untimely, incomplete and unsupported application for waiver of premiums was denied on March 13, 1953, cannot preclude this court from passing on this critical question upon evidence fully developed at the trial of this case. I am satisfied that the facts which I have found from the evidence are amply sufficient to show that the insured veteran's failure to file a timely application for a waiver of premiums, was due to circumstances beyond his control. True, he was not *non compos mentis*, but by the better reasoned authorities, a finding of *non compos mentis* is not necessary. Landsman v. United States, 92 U.S.App.D.C. 276, 205 F.2d 18; Martin v. United States, 7 Cir., 238 F.2d 245; Jensen v. United States, D.C., 94 F.Supp. 468;

United States v. Barnett, 5 Cir., 230 F.2d 926.

I will not follow Aylor v. United States, 5 Cir., 194 F.2d 968, nor Horton v. United States, 5 Cir., 207 F.2d 91. The doctrine enunciated in these two cases seems to me to be harsh and contrary to the intent of Congress.

This question was previously presented to me in White v. United States, D.C., 123 F.Supp. 869, and I held that aggravated illness, resulting in total disability and finally death, but not resulting in total mental incapacity, constituted circumstances beyond the veteran's control sufficient to excuse his failure to apply for waiver of premiums, and there was no appeal. Of course, I can conceive of cases of total disability which would not constitute circumstances beyond the veteran's control, sufficient to excuse the veteran's failure to apply for waiver of premiums. But, in my opinion, this is not such a case.

At the trial, defendant filed its motion to dismiss this action for lack of jurisdiction, contending that the plaintiff-beneficiary was not entitled to make an application for waiver of premiums because the veteran in his lifetime had filed such an application, and the fact that she had in fact made such an application, which was denied, did not constitute such a disagreement as is a prerequisite to suit under the statute. It is quite true that the last proviso of 38 U.S.C.A. § 802(n), seems only to permit the filing of an application for waiver by a beneficiary "in the event of death of the insured without filing application for waiver". So it would seem that plaintiff had no right to file an application for waiver, because her son, the insured, had filed such an application in his lifetime. However, her action in filing an application for waiver and its denial, may be treated as a nullity, and the statutory disagreement still exists by reason of the plaintiff's timely demand for payment of benefits under her son's insurance contract, and the denial thereof by the Veterans' Administration. In support of its motion, plaintiff cites and relies on Guihan v. United States, D.C., 110 F.Supp. 738, which was decided without a trial on a motion for summary judgment filed by the defendant. This decision, of course, is not binding on me, and it does not appear to me to have been as thoroughly considered as if all of the facts had been developed in a trial. The decision seems to me to confuse the right of the beneficiary to file an application for waiver of premiums, and the beneficiary's right to sue upon the policy. I would have to agree that, in the instant case, the plaintiff-beneficiary had no right under the provisions of 802(n) to file an application for waiver of premiums for the reason that such an application had been filed by the insured in his lifetime, and I would also agree with the proposition that, after the death of the insured, a beneficiary cannot possibly stand on higher ground, or occupy a more favorable position, than the insured did during his lifetime. But that certainly should not, and does not in my opinion, preclude a beneficiary from suing on the insurance contract after demand for payment of its benefits has been made and refused.

It seems to me that the facts of this case should be most appealing to any fair-minded court. The United States Navy accepted this young man on May 15, 1943, right out of the high school. Obviously, he must have been strong, vigorous and in perfect health, or he could not have met the rigid requirements for acceptance as a Flight Cadet. He served creditably almost exactly three years, during which time he achieved favorable ratings, without demerit so far as the record shows. In the spring of 1946, he and another sailor on the same ship were suspected of tuberculosis and hospitalized. The X-rays and other tests made should have demonstrated to the examining doctors that this boy had active tuberculosis, but the doctors reported otherwise. They reported that he was free from active tuberculosis, discharged him from the hospital, and discharged him from the Navy for what appears to me to be the specious reason

of his excessive height. There is nothing to indicate that his height had interfered with his discharge of his duties during his nearly three years of service, and it seems to me indeed strange that, when admittedly he was suspected of having tuberculosis, and ordinary care should have disclosed the fact that he was actively tubercular, the Navy should have suddenly noticed that he was too tall and discharged him for that reason. He should have been sent to a Navy hospital for treatment, or at the very least, he should have been told that he had active tuberculosis so that he might have been admitted to a Veterans' Administration hospital, but on the contrary, he was discharged as a well man, and proceeded to undertake to improve himself by entering the University of North Carolina as a student. It is well known, and also appears in the evidence here, that the more promptly tuberculosis is treated, the better the patient's chance is of recovery. In this case, due to the fact that the Navy doctors had pronounced him a well man, this boy did not know that he had tuberculosis, and consequently took no treatment for it for nearly nine months, when he went to the Johns Hopkins Hospital, apparently at his own expense, and learned that he was suffering from active, advanced tuberculosis. It cannot be said with certainty that the veteran infected them, but after association with him, his wife and father contracted tuberculosis. Happily, his wife recovered, but his father died before the death of the veteran. Undoubtedly, from the evidence the insured veteran was totally disabled from the date of his discharge until his death, and therefore entitled to a waiver of the payment of premiums on his life insurance. Had he made an application for waiver of premiums any time prior to August 1, 1947, he should have been granted such a waiver without question. Until February 10, 1947, nine months after his discharge, of course he did not apply for a waiver of premiums because he did not know he had active tuberculosis, due to the fact that the Navy doctors, who should have known it, did not tell him so and permitted him to be discharged as a well man by reason of his excessive height. From the time the veteran learned he was suffering from tuberculosis, February 10, 1947, until August 1, 1947, he was toxic, seriously ill, and psychopathic. To deny his widowed mother the benefits of the insured veteran's insurance, which he bought and paid for until his total disability, by reason of technicalities relied upon by the Government, would seem to me to be a miscarriage of justice.